1  SEYFARTH SHAW LLP
   Brian T. Ashe (SBN 139999)
2  bashe@seyfarth.com
   560 Mission Street, 31st Floor
3  San Francisco, California 94105
   Telephone:    (415) 397-2823
4  Facsimile:    (415) 397-8549

5  SEYFARTH SHAW LLP
   John R. Giovannone (SBN 239366)
6  jgiovannone@seyfarth.com
   333 S. Hope Street, Suite 3900
7  Los Angeles, California  90071
   Telephone:    (213) 270-9600
8  Facsimile:    (213) 270-9601

9  Attorneys for Defendant
   HARVEST MANAGEMENT SUB LLC

10

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  TARA SHAIA, ERIC PARKER, on behalf of      Case No. 4:14-cv-04495 PJH
    themselves and on behalf of others similarly
17  situated,                                  **DEFENDANT'S OPPOSITION TO
                                               PLAINTIFF'S MOTION FOR
18              Plaintiffs,                     CONDITIONAL COLLECTIVE ACTION
                                               CERTIFICATION**
19       v.
                                               Date:        April 1, 2015
20  HARVEST MANAGEMENT SUB LLC,                Time:        9:00 a.m.
                                               Courtroom.: 3
21              Defendant.                      Judge.:      Hon. Phyllis J. Hamilton

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 3

        A.      Executive Chefs Play a Pivotal Role at Holiday Retirement's Communities .................. 3

        B.      Plaintiff Shaia Is a Highly Skilled Executive Chef ............................................ 3

        C.      Plaintiff Seeks to Represent Over 750 Executive Chefs Across the Country ................... 4

        D.      Many Executive Chefs Waived Their Right To Participate In Plaintiff's Lawsuit ............ 4

                1.      Over 70% of the Putative National FLSA Collective Are Bound to an
                        Arbitration Agreement With a Class Action Waiver Clause ................................ 4

                2.      Almost All California Executive Chefs Have Settled Their Claims With
                        Holiday And Agreed Not To Participate In Plaintiff's Lawsuit ......................... 5

III.    LEGAL STANDARD ............................................................................................... 6

IV.     ARGUMENT ........................................................................................................... 8

        A.      Plaintiff Fails to Meet Her Burden; The Evidence Does Not Show That the
                Putative Class is "Similarly Situated" ............................................................ 8

                1.      Plaintiff's Inadmissible Hearsay Does Not Satisfy Conditional
                        Certification Standards ..................................................................... 8

                2.      Assertion Of A Uniform Exempt Classification Of Executive Chefs Does
                        Not Satisfy Conditional Certification Standards ......................................... 10

                3.      Assuming the Matter is Properly in Evidence, Holiday's Re-Classification
                        Of California Executive Chefs Has No Relevance To The Appropriateness
                        Of Collective Certification ............................................................... 11

                4.      Asserting Similar Legal Claims Does Not Make Plaintiff Similarly
                        Situated To Other Executive Chefs ........................................................ 12

                5.      The Court Must Conduct Individualized Inquiries Into Each Chef's
                        Exempt Status Classification That Will Predominate This Matter ......................... 13

        B.      Even If Plaintiff Met Her Burden, the Entire Proposed Collective Should Not
                Receive Notice Because Many Waived the Right to Participate In This Lawsuit ............. 14

                1.      Executive Chefs Entered Into Arbitration Agreements That Contain a
                        Class/Collective Action Waiver Enforceable Under Many Different
                        State's Laws .............................................................................. 15

                2.      Executive Chefs Entered Into *Pick Up Stix* Agreements That Contain a
                        Class/Collective Action Waiver ........................................................... 16

                3.      Notice Must Be Significantly Revised to Exclude Those Putative Class
                        Members Bound To the Class/Collective Action Waivers .................................... 17

i

C.    Even If Plaintiff Met Her Burden, the Proposed Notice Procedure Is Improper And Must Be Revised ............................................................................................. 18

    1.    The Proposed Notice *Excludes* Several Important Issues ..................................... 18

    2.    The Proposed Notice *Includes* Several Improper Issues ....................................... 19

V.    OBJECTIONS TO PLAINTIFF'S EVIDENCE ........................................................... 21

VI.    CONCLUSION ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Adams v. Inter-Con Sec. Sys., Inc.*,
242 F.R.D. 530 (N.D. Cal. 2007)................................................................................7

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)...........................................................................................15, 16

*Bah v. Shoe Mania, Inc.*,
2009 U.S. Dist. LEXIS 40803 (S.D.N.Y. May 13, 2009)...................................16

*Barrera v. US Airways Group, Inc.*,
2013 WL 4654567 (D. Ariz. 2013)..........................................................................18

*Benedict v. Hewlett-Packard Co.*,
No. 13-CV-00119-LHK, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014)............7, 18, 19

*Bishop v. Petro-Chem Transport, LLC*,
582 F. Supp. 2d 1290 (E.D. Cal. 2008)....................................................................8

*Brewer v. Gen. Nutrition Corp.*,
No. 11-CV-03587 YGR, 2013 WL 100195 (N.D. Cal. Jan. 7, 2013) ................7

*Castle v. Wells Fargo Financial, Inc.*,
2008 WL 495705 (N.D. Cal. 2008) .......................................................................7, 8

*Colson v. Avnet, Inc.*
687 F. Supp. 2d 914 (D. Ariz. 2010) ............................................................... *passim*

*Costello v. Kohl's Illinois, Inc.*,
2014 WL 4377931 (S.D.N.Y 2014).........................................................................10

*D'Anna v. M/A-COM, Inc.*
903 F. Supp. 889 (D. Md. 1995) ...............................................................................8

*Dacanay v. Mendoza*,
573 F.2d 1075 (9th Cir. 1978) .................................................................................16

*De La Tore v. Merck Enterprises, Inc.*,
540 F. Supp. 2d 1066 (D. Ariz. 2008) ...........................................................21, 22, 23

*DeKeyser v. Thyssenkrupp Waupaca, Inc.*,
2008 WL 5263750 (E.D. Wis. 2008)........................................................................20

*Gayle v. United States*,
85 Fed. Cl. 72 (2008) .................................................................................................8

*Guillen v. Marshalls of MA, Inc.*,
750 F. Supp. 2d 469 (S.D.N.Y. 2010).....................................................................17

*Hart v. U.S. Bank NA*,
2013 WL 5965637 (D. Ariz. 2013)....................................................................21

*Hernandez v. United Auto Credit Corp.*,
2010 WL 1337702 (N.D. Cal. 2010) ...................................................................13

*Hintergerger v. Catholic Health System*,
2009 WL 3464134 (W.D.N.Y. 2009) ..................................................................21

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989)................................................................................ *passim*

*Holick v. Cellular Sales of New York, LLC*,
2014 WL 4771719 (N.D.N.Y. 2014)........................................................11, 22, 23

*In re Wells Fargo*,
571 F.3d 953 (9th Cir. 2009) ..............................................................................13

*Jenkins v. The TJX Companies, Inc.*,
853 F. Supp. 2d 317 (S.D.N.Y. 2012)............................................................11, 13

*Jirak v. Abbott Laboratories, Inc.*,
566 F. Supp. 2d 845 (N.D. Ill. 2008) ..................................................................21

*Johnmohammadi v. Bloomingdales, Inc.*,
755 F.3d 1072 (9th Cir. 2014) .............................................................................15

*Jones v. Beverly Hills Unified School Dist.*,
2011 WL 2442077 (C.D. Cal. 2011).....................................................................21

*Labrie v. UPS Supply Chain Solutions, Inc.*,
Case No. C08-3182 PJH, 2009 WL 723599 (N.D. Cal. Mar 18, 2009) ........................6, 7, 8

*Lewis v. Wells Fargo & Co.*,
669 F. Supp. 2d 1124 (N.D. Cal. 2009) ............................................................7, 19

*Lin v. Benihana National Corp.*,
755 F. Supp. 2d 504 (S.D.N.Y. 2010)................................................................8, 11

*Luque v. AT & T Corp.*,
No. C 09-05885 CRB, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010)...........................7

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
2015 WL 502697 (E.D. Cal. 2015).......................................................11, 22, 23

*Mike v. Safeco Ins. Co. of Am.*,
274 F. Supp. 2d 216 (D. Conn. 2003)....................................................................13

*Morisky v. Pub. Serv. Elec. and Gas Co.*,
111 F. Supp. 2d 493 (D.N.J. 2000) ......................................................................11

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
2011 WL 6794438 (S.D. Fla. 2011) ..........................................................9, 10, 13, 16

*Pfol v. Farmers Insurance Group*,
   2004 WL 554834 (C.D. Cal. 2009).................................................................................11

*Picerni v. Bilingual Seit & Preschool, Inc.*,
   925 F. Supp. 2d 368 (E.D.N.Y. 2013) ...........................................................................17

*Recinos-Recinos v. Express Forestry, Inc.*,
   233 F.R.D. 472 (E.D. La. 2006).....................................................................................19

*Robbins-Pagel v. Wm. F. Puckett, Inc.*,
   2006 U.S. Dist. LEXIS 85253 (M.D. Fla. Nov. 22, 2006) .............................................16

*Russell v. Wells Fargo & Co.*,
   2008 U.S. Dist. LEXIS 78771 (N.D. Cal. Sept. 3, 2008) ...............................................19

*Sanders v. Swift Transportation Co. of Ariz., LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ..........................................................................15

*Santiago v. Amdocs, Inc.*,
   No. C 10-4317 SI, 2011 WL 6372348 (N.D. Cal. Dec. 19, 2011) ....................................7

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ...........................................................................21, 22, 23

*Sharma v. Burberry Ltd.*,
   2014 WL 4385426 (E.D.N.Y. 2014)................................................................................21

*Trinh v. JP Morgan Chase & Co.*,
   2008 WL 1860161 (S.D. Cal. 2008) ........................................................................ *passim*

*Velazquez v. HSBC Finance Corp.*,
   266 F.R.D. 424 (N.D. Cal. 2010).................................................................................6, 7

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ....................................................................................10, 13

*Wagner v. Stratton Oakmont, Inc.*,
   83 F.3d 1046 (9th Cir. 1996) ...........................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).....................................................................................................12

*Wertheim v. State of AZ*,
   1993 WL 603552 (D. Ariz. Sept. 30, 1993).....................................................................18

*Williams v. Bally's Louisiana, Inc.*,
   2006 WL 1235904 (E.D. La. May 5, 2006)......................................................................19

*Williams v. Long*,
   585 F. Supp. 2d 679 (D. Md. 2008) .................................................................................19

**STATE CASES**

*Chindarah v. Pick Up Stix Inc.*,
   171 Cal. App. 4th 796 (2009) ................................................................................. *passim*

*Hilleary v. Garvin*,
   193 Cal. App. 3d 322 (1987) .......................................................................................15

*In re United Parcel Serv. Wage and Hour Cases*,
   190 Cal. App. 4th 1001 (2010) ...................................................................................11

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*,
   74 Cal. App. 4th 1105 (1999) .....................................................................................15

*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
   89 Cal. App. 4th 1042 (2001) .....................................................................................15

**FEDERAL STATUTES**

9 U.S.C. § 2 ........................................................................................................................15

29 U.S.C. § 216(b) ...............................................................................................................6

29 U.S.C. § 256(b) .............................................................................................................18

Fair Labor Standards Act ............................................................................... *passim*

**STATE STATUTES**

Cal. Code Regs. Title 8, §§ 11050(1)(B)(1)(e) .............................................................11, 12

Cal. Lab. Code § 203 ..........................................................................................................12

Cal. Lab. Code § 226 ..........................................................................................................12

Cal. Lab. Code § 226.7 .......................................................................................................12

Cal. Lab. Code § 1194.2 .....................................................................................................12

**RULES**

Fed. R. Evid. 407 ...................................................................................................11, 22, 23

Fed. R. Evid. 602 ........................................................................................................ *passim*

Fed. R. Evid. 801 .........................................................................................................10, 22

Fed. R. Evid. 802 ...................................................................................................10, 11, 22

Fed. R. Evid. 901 ..........................................................................................................22, 23

**REGULATIONS**

29 C.F.R. § 106 ...................................................................................................................13

29 C.F.R. § 541.100(a)(2) ...................................................................................................12

29 C.F.R. § 541.102 ............................................................................................................12

29 C.F.R. § 541.700 ............................................................................................................13

1

**I.     INTRODUCTION**

Plaintiff Tara Shaia asks for conditional certification of a national putative collective of over 750 current and former Executive Chefs, whom she claims were misclassified as overtime exempt under the Fair Labor Standards Act, based on hearsay, unauthenticated and incomplete documents, personal extrapolations, and unauthenticated and inadmissible subsequent remedial measures consisting exclusively of the following:

(1) a single declaration from Plaintiff Shaia listing only her personal job duties in 13 of the 15 paragraphs in her declaration,

(2) a four-line hearsay conclusion from Plaintiff Shaia that there is "zero variation" in the duties of the entire class because she has spoken with some unidentified Executive Chefs and they told her about performing similar duties (ECF No. 12, Shaia Dec., ¶ 15, p. 3:12-16),

(3)  a single, foundationless conclusory sentence from Plaintiff Shaia about unspecified training and guidelines (not submitted) that she says apply to the nationwide class in some unexplained way (*Id.* at ¶ 15, p. 3:16-19),

(4)  unauthenticated documents about Plaintiff Shaia's job reclassification in California (ECF No. 11, Medby Dec., Exs. 2 to 4),

(5) an unauthenticated, unsigned, and incomplete job description for an Executive Chef dated almost five years before present (*Id.* at Ex. 5), and

(6) a few job postings pulled from a website on a single day out of the three-year statutory period (*Id.* at Ex. 6).

There is no declaration from the second Plaintiff, no putative class declarations, and no admissible documentary evidence showing that Chefs are bound by common policies.  Because Plaintiff's evidence is inadmissible, she has not met her burden on this Motion.

Further, Plaintiff does not attempt to harmonize the genuine and material differences among the many hundreds of individuals falling within her description of the purported classes.  For example, she never discusses how to unify a putative class of the current and former Executive Chefs who are and were:

- Spread out across 43 states with multiple regions and differing middle management,

- Running kitchens at nearly 300 separate senior living communities,

- Working with local management with a range of competencies that directly impact the ability of the Executive Chef to engage in exempt work, and

- Working with different kitchen staffs, some with high skills that allow the Executive Chef to do his or her job differently and some with lesser skilled staffs that require more time and personnel management by their Chefs.

While Plaintiff does not have to submit substantial evidence at this stage, she does not address any of these basic macro-level issues.

There is no proper evidentiary showing that the many hundreds of other individuals are "similarly situated." While the burden on this Motion is not heavy, it does require proof. Nothing admissible was provided on this issue. Case law says that such a cripplingly weak evidentiary showing is insufficient to satisfy the test on this Motion. Plaintiff's Motion should therefore be denied.

Even if the Court were to grant Plaintiff's Motion, the proposed notice is so riddled with flaws and unfair provisions that it would need to be substantially rewritten. In addition, almost all of the purported California Class of Executive Chefs[1] have entered into agreements with defendant with one clause that waives any ability to participate in this litigation and another that releases all claims. On top of that, over 70% of the purported Nationwide FLSA Class are bound by arbitration agreements with class action waivers.

The inability of a majority of the putative class to participate in the litigation, together with a contractual obligation to pay the attorneys' fees associated with any motion to enforce the arbitration agreement, were not considered when drafting the proposed notice. Because of the flaws in the proposed notice and the important material left out of it, significant rewriting is obligatory lest there be an avalanche of avoidable tertiary litigation.

---

[1] Although not relevant for purposes of this response, given this lack of numerosity, Plaintiff would have a steep uphill battle showing that a class proceeding is the proper forum for litigating the claims of the few remaining California class members (some of which are bound by arbitration agreements) if the case were to proceed to that point.

2

## II.   BACKGROUND

### A.   Executive Chefs Play a Pivotal Role at Holiday Retirement's Communities

Defendant Harvest Management Sub LLC, which does business under the brand "Holiday Retirement" or "Holiday," currently owns or operates approximately 300 senior living communities throughout the United States.  (EFC No. 22, ¶ 16.)  A highlight of the all-inclusive services provided by Holiday is the cuisine prepared from scratch in the communities' kitchens, all of which are managed by a professionally trained Executive Chef.  (Dec. of Heather Bowers, ¶¶ 2, 3.)  These Executive Chefs supervise and manage every aspect of their assigned kitchens, and the entire kitchen staff – including a sous chef, prep cook, kitchen helper, dishwasher, and the entire wait staff – report directly to the Executive Chef.  (*Id*. at ¶ 3.)

The menus offered to the residents of any particular community present a variety of options for every meal, and each Executive Chef is responsible for planning, budgeting for, and overseeing preparation of their extensive menus, which include regional favorites and alternative options.  For Holiday's seniors, the dining room is a focal point of the community.  (*Id*. at ¶ 2.)  From three years measured from March 2015, there were 759 Executive Chefs across America.  (Declaration of Meghann Barger, ¶ 3.)  The number of Executive Chefs in California over that same time period was 96.  (*Id*.)

### B.   Plaintiff Shaia Is a Highly Skilled Executive Chef

Plaintiff is the current Executive Chef for Holiday's Bay Park Community in Pinole, California.  (ECF No. 22 at ¶ 14.)  She has been employed there since November 2005, and she is recognized at Holiday as being a talented Executive Chef.  Her performance regularly has been noted as meeting or exceeding expectations, and she has been singled out for her management skills, strong work ethic, and excellence.  In 2013, she scored a perfect 100% on her annual performance review.

Shaia has advanced culinary education and experience in the culinary industry, and upon hire was classified as exempt from overtime requirements.  Plaintiff says that Holiday reclassified her, along with all other California Executive Chefs, to become non-exempt in May 2014.  (ECF No. 22.)

### C.      Plaintiff Seeks to Represent Over 750 Executive Chefs Across the Country

Plaintiff alleges that Holiday misclassified her and all other Executive Chefs nationwide as exempt from overtime under the FLSA.  (ECF No. 22.)  As it relates to the FLSA claims, Plaintiff seeks to represent the following class: "all persons who were, are, or will be employed by [Holiday] nationwide as Executive Chefs at anytime within the three years prior to the filing of this complaint through the date of the final disposition of this action . . . ."  (*Id.* ¶ 9.)

Shaia has offered no evidence from any other Executive Chef, including her co-Plaintiff or the three Executive Chefs who filed – two of whom later withdrew – opt in notices[2] in these proceedings.  Despite this lack of evidence that any other Executive Chef was similarly situated to Shaia, she seeks permission from this court for conditional certification of the entire nationwide class.

### D.      Many Executive Chefs Waived Their Right To Participate In Plaintiff's Lawsuit

#### 1.      Over 70% of the Putative National FLSA Collective Are Bound to an Arbitration Agreement With a Class Action Waiver Clause

Prior to this lawsuit, Holiday instituted an arbitration program for all of its employees.  (Bowers Dec. at ¶¶ 9-11.)  The only members of the putative class who are *not* bound by the agreements are those Executive Chefs whose employment terminated prior to the start of the arbitration program or those few incumbent employees who affirmatively opted-out of the program.  (*Id.*)

The arbitration agreements mandate arbitration of all employment-related disputes and contain a broad class action waiver clause.  (*Id.* at ¶¶ 9-11, Exs. D & H.)  More than 70% of putative class are bound by these agreements.  (Barger Dec., ¶¶ 4, 5.)

The arbitration agreement states (in original CAPITALIZATION and **bolding**):

. . . By entering into this Agreement, you ("**Associate**") and the Company are **WAIVING THE RIGHT TO A JURY TRIAL** for all disputes arising out of, or related to, the employment relationship and are **WAIVING THE RIGHT TO PURSUE, OR PARTICIPATE IN, ANY CLASS OR OTHER FORM OF OTHER REPRESENTATIVE ACTION** concerning these types of disputes.

(Bowers Dec. at ¶¶ 9-11, Exs. D & H.)

The agreement continues:

---

[2] EFC Nos. 9, 21, 27, 35 and 36.

The Company and Associate hereby agree that *any dispute* between Associate and the Company . . . that *is related to, arises from, or is in connection with Associate's employment* . . . with the Company, must be submitted for resolution by mandatory, binding arbitration. (*Id*. [emphasis added].)

Executive Chefs entered into this agreement in two ways. (*Id*. at ¶¶ 9-11.) Some executed agreements as part of their hiring process. (*Id*. at ¶ 11.) Others did not opt-out of the arbitration agreement when it was rolled out to incumbent employees. (*Id*. at ¶ 10.)[3]

### 2. Almost All California Executive Chefs Have Settled Their Claims With Holiday And Agreed Not To Participate In Plaintiff's Lawsuit

After this lawsuit was filed, Holiday instituted a limited settlement campaign as permitted by *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796 (2009). It targeted only the putative California Class.

The Company mailed an explanatory cover letter and a settlement offer to the home addresses of each putative California Class member. (Bowers Dec. at ¶ 4.) The only exceptions were Plaintiff and Executive Chefs who executed releases previously. (*Id*.) Chefs could choose in the privacy of their homes whether to sign and return the settlement. (*Id*.) All that the Executive Chefs had to do was execute the release and Holiday would send them their settlement check. (*Id*.) Most did.

The settlement offers were not adhesion contracts or conditions of employment. Instead, Holiday offered Executive Chefs the opportunity to negotiate for a higher settlement payment. (*Id*. at ¶ 5.) Some did and received higher amounts than what Holiday originally offered. (*Id*.) Others accepted the money that was offered initially. (*Id*.)

Some Executive Chefs were mailed a live check with the settlement offer. (*Id*. at ¶ 6.) These people received a cover letter explaining that cashing the check constituted acceptance of the release in the offer. (*Id*., Ex. C.)

---

[3] Plaintiff's counsel acknowledge the validity of the agreements. After filing opt-in consent forms for Josefina Gubatan and Amanda Cultrona (ECF Nos. 9, 27), counsel learned that both were bound by the arbitration agreement (Gubatan did not opt-out and Cultrona signed the agreement on hire), and so withdrew their opt-in forms. (Declaration of John Giovannone ("Giovannone Dec.") at ¶ 3, Ex. A; ECF No. 35.) The latest opt-in, Angelica Williams (ECF No. 36.), is also bound by an arbitration agreement.

5

To date, 88 California Executive Chefs have accepted Holiday's settlement offer and agreed to a class action waiver in that contract, or previously released all claims against Holiday.  (*Id*. at ¶ 7; *see*, Barger Dec. at ¶3 (96 California Chefs).)

The California Executive Chefs released "any and all causes of action," known or unknown, that they may have had against Holiday.  (*Id*. at ¶¶ 4, 6, Exs. B & C.)  In addition, Executive Chefs also agreed to facilitate the settlement by affirming its validity before a court.  (*Id*.)  They also agreed not to participate in this action.  (*Id*.)  That clause says:

> 2(c).   **Promise Not to File Lawsuit or Administrative Action or Participate in Class, Collective, or Representative Action.**  You agree not to file any lawsuit or administrative complaint about any Claims released by this Agreement, except that you may file any administrative complaints for which you do not seek monetary recovery. ***You further agree not to participate in any representative lawsuit that asserts any of the Claims released by this Agreement***.

(*Id*. [emphasis added].)

## III.   LEGAL STANDARD

The FLSA allows an employee to bring a collective action against an employer on behalf of himself or herself and other employees similarly situated.  29 U.S.C. § 216(b).  Neither the FLSA, the Ninth Circuit, nor the Supreme Court have defined the term "similarly situated."  *Velazquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 426-27 (N.D. Cal. 2010).  However, the Supreme Court has indicated that a proper collective action will address in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged prohibited activity."  *Id*. (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).)

District courts in the Ninth Circuit have adopted a two-tiered approach for determining whether employees are similarly situated.  *Velazquez*, 266 F.R.D. at 427 (citing cases).  Determining whether a case may proceed as a collective action is within the discretion of the trial court.  *Id*.  However, the Court's discretion is not "unbridled."  *Hoffmann-LaRoche, Inc.*, 493 U.S. at 174.

Under the first tier, generally called the "notice stage," the Court decides whether the employees are sufficiently similarly situated such that notice should be sent giving them the opportunity to "opt-in" to the case.  *Valezquez*, 266 F.R.D. at 427.  In this stage, the Court requires substantial allegations supported by proper declarations.  *Id*.  "[U]nsupported assertions of FLSA violations are not sufficient to

6

meet Plaintiff's burden." *Id.* Instead, the plaintiff must provide some factual basis "beyond mere averments" that the potential plaintiffs are similarly situated. *See Labrie v. UPS Supply Chain Solutions, Inc.*, Case No. C08-3182 PJH, 2009 WL 723599 *4 (N.D. Cal. Mar 18, 2009). Typically, in the Northern District of California, multiple declarations from a variety of admissible sources are presented.[4] In *Labrie*, for instance, all five of the plaintiffs plus 25 other declarants from around the country filed declarations that the Court expressly found to contain competent evidence bolstering the averments. 2009 WL 723599 *5. In contrast, there is no competent evidence on the similarly situated element here and the only other Plaintiff in this case did not file a supporting declaration (and no other Chef did either).

A lack of competent evidence of similarity precludes class certification. Courts deny conditional certification in circumstances, like those present, where the plaintiff submits:

- Unsupported assertions of FLSA violations.

- Speculation; or

- Inadmissible evidence.

*Valezquez*, 266 F.R.D. at 427; *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 at *4 (S.D. Cal. 2008) (speculative beliefs not enough); *Colson v. Avnet, Inc.* 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (hearsay statements prohibited). This is because obtaining conditional certification requires the plaintiff to establish with proper affidavits a reasonable basis for a claim of class wide violations. *Castle v. Wells Fargo Financial, Inc.*, 2008 WL 495705 at *2 (N.D. Cal. 2008).

Plaintiff seeks to conditionally certify a nationwide class of every Executive Chef who worked at approximately 300 of Holiday's senior living communities over the course of more than three years. Because, at most, she has offered unsubstantiated "mere averments" and has not met her burden, the Court should deny Plaintiff's motion.

---

[4] *See, e.g., Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at *2 (N.D. Cal. Feb. 13, 2014) (**33** declarations); *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *4 (N.D. Cal. Jan. 7, 2013) (**5** declarations); *Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2011 WL 6372348, at *1 (N.D. Cal. Dec. 19, 2011) (**19** declarations); *Luque v. AT & T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *4 (N.D. Cal. Nov. 19, 2010) (**18** declarations); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) (**27** declarations); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 538 (N.D. Cal. 2007) (**13** declarations).

1  IV.    **ARGUMENT**

2       A.    **Plaintiff Fails to Meet Her Burden; The Evidence Does Not Show**
             **That the Putative Class is "Similarly Situated"**

3

4            1.    **Plaintiff's Inadmissible Hearsay Does Not Satisfy Conditional**
                   **Certification Standards**

5       Meeting the standard for conditional certification requires that plaintiffs provide actual evidence

6  of similarity in addition to mere averments in a complaint. *Labrie*, 2009 WL 723599 * 6 (plaintiffs

7  provided competent factual basis beyond mere averments to support allegations); *Bishop v. Petro-Chem*

8  *Transport, LLC,* 582 F. Supp. 2d 1290, 1297 (E.D. Cal. 2008); *Castle*, 2008 WL 495705 at *2; *Trihn*,

9  2008 WL 1860161 at *4. Hearsay or speculation does not suffice. *See Trinh* at *4; *Colson*, 687 F.

10 Supp. 2d at 928-29. Nor does foundationless statements by a plaintiff's lawyer with no personal

11 knowledge. *Colson*, 687 F. Supp. 2d at 929 (statements of plaintiff's counsel have little to no

12 evidentiary value).[5]

13       *Trinh* provides an example. In that case (as in the one now before this Court), the plaintiffs

14 brought an FLSA action against their employer alleging that all employees with their job title were

15 misclassified as exempt from overtime. *Trihn*, 2008 WL 1860161 at *1. In moving for conditional

16 certification, they argued that the job description was the same across the class and that they believed all

17 other employees had the same job functions. *Id*. at *3.

18       The Court found that the plaintiffs failed to make a sufficient showing. *Trihn*, 2008 WL

19 1860161 at *3-4. Specifically, the Court denied conditional collective certification observing that the

20 plaintiffs offered "no real evidence, beyond their own speculative beliefs, suggesting that [class

21 members] across the country . . . were required to work in the same manner." *Id*. at *4. The Court also

22

23 [5] *See also Lin v. Benihana National Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010) (denying conditional
   certification, noting that "[a]though the plaintiff need only make a 'modest' showing that the putative

24 collective action members are similarly situated, the evidence must be sufficient to demonstrate that
   current and potential plaintiffs together were victims of a common policy or plan that violated the law")

25 (internal quotations and citation omitted); *Gayle v. United States*, 85 Fed. Cl. 72, 78 (2008)
   (notwithstanding lenient standard, plaintiff must offer "some credible evidence" that other potential

26 plaintiffs are similarly situated); *D'Anna v. M/A-COM, Inc.* 903 F. Supp. 889, 894 (D. Md. 1995)
   (surveying cases, noting that the "better reasoned cases" require a "preliminary factual showing" at the

27 first stage, and denying certification because plaintiff failed to provide the required "relatively modest
   factual showing" where he provided only "meager factual support for [his] [broad and] vague

28 allegations").

1   found that the plaintiffs failed to show that the other employees had the same job duties. *Id*.

2   *Colson* provides another good example. There, the plaintiff alleged that she and other marketing

3   representatives were misclassified under the FLSA. *Colson*, 687 F. Supp. 2d at 917. She sought an

4   order conditionally certifying a class. *Id*. As evidence, she submitted her own declaration, a declaration

5   from her attorney, and one other former employee that did not hold the plaintiff's position. *Id*. at 926.

6   The plaintiff argued other employees were similarly situated to her because she performed the same

7   tasks as other employees nationwide. *Id*. at 927.

8   As Plaintiff does here, the plaintiff offered her opinion based on hearsay from unidentified

9   sources. *Colson*, 687 F. Supp. 2d at 928-29. Unlike the plaintiffs in this case, though, she also

10  submitted a complete job description and correspondence between the parties' attorneys — both

11  purportedly authenticated by her counsel. *Id*.

12  The Court rejected this evidence finding that it was inadmissible hearsay, lacked foundation, and

13  entitled to little or no weight. *Colson*, 687 F. Supp. 2d at 928-29. In denying the plaintiff's motion, the

14  Court called the plaintiff's claim "insupportable" and said it would not "rubber stamp" collective claims

15  brought under the FLSA. *Id*. at 929-30.

16  *Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2011 WL 6794438 at *5 (S.D. Fla.

17  2011) provides a final example. In *Palacios*, the plaintiff filed an action under the FLSA alleging that

18  he and other pharmaceutical sales representatives were misclassified as exempt from overtime. *Id*. at *1.

19  The plaintiff claimed that the putative class was similarly situated because they shared the same job

20  duties. *Id*. Going further than Plaintiff does here, the plaintiff in *Palacios* offered multiple declarations

21  from three other employees asserting that they had conversations with other unnamed employees about

22  "common job activities." *Id*. at *5. The Court denied the plaintiff's motion, finding this evidence

23  insufficient because it was conclusory and provided no meaningful details. *Id*.

24  Here, Plaintiff offers less than what was already found insufficient in these other cases. For

25  instance, while still evidentially inadequate, the testifying lawyer in *Colson* at least tried to authenticate

26  a complete document and also submitted correspondence between the parties' attorneys. Unlike the

27  plaintiff in *Colson*, the purported job description submitted by the testifying lawyer here is not even a

28  complete document (Bowers Dec. at ¶ 8) and no correspondence between counsel was proffered.

Likewise, here only one declaration from Plaintiff was submitted, whereas multiple declarations accompanied the motion in *Palacios*.  If multiple declarations were insufficient, then the lone declaration here is also insufficient because the substantive content is the same.[6]

Moreover, the unilateral conclusion that all Executive Chefs nationwide have "zero variation" job duties is inadmissible.  (*See* ECF No. 12 at ¶15.)  The only attempt at creating a foundation for this conclusion is that Plaintiff says, "I have spoken to dozens of other Executive Chefs of other Harvest retirement communities about our jobs and they all perform or performed the same kind of work. . ." (*Id*. at ¶15:13-15.)  That is hearsay and cannot be used to prove the point asserted.  *See* Fed. R. Evid. 801, 802.  This is precisely the type of unsupported hearsay statement that *Colson*, *Trihn*, and *Palacios* rejected as being insufficient.

Perhaps worse than Plaintiff's hearsay is her counsel's attempt to authenticate a document described as a job description.  (ECF No. 11 at ¶10, Ex. 5.)  He provides no personal knowledge or foundation to admit the document.  Nor does counsel claim to have any experience working for Holiday in any capacity.  Without a proper foundation and authentication, the document is inadmissible.[7]  Fed. R. Evid. 602.  Regardless, under *Trihn* and *Colson*, a simple job description is insufficient to support certification.[8]  Like *Trihn*, *Colson*, and *Palacios*, the Court should deny Plaintiff's motion as it lacks sufficient evidentiary support.

### 2.  Assertion Of A Uniform Exempt Classification Of Executive Chefs Does Not Satisfy Conditional Certification Standards

Focusing on a uniform exemption does little to further the assessment between individual and common issues.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).  Courts considering whether to conditionally certify a class under the FLSA have consistently rejected reliance on uniform exempt status classifications as being sufficient evidence for certification.  *See Colson*, 687

---

[6] Holiday trusts that Plaintiff will not attempt to submit inappropriate reply evidence.  Not only is submitting late evidence improper, rather than help their motion, it would stand as further proof that the original evidence was insufficient.

[7] As shown earlier, the document offered by Plaintiff's counsel is not even complete.  For this additional reason, the document submitted by Plaintiff's counsel should be given no weight.

[8] *See also Costello v. Kohl's Illinois, Inc.*, 2014 WL 4377931 at *4 (S.D.N.Y 2014) (uniform job description not enough for conditional certification).  Under the same authority, the same is true for the online job postings offered by Plaintiff's counsel.  (ECF No. 11 at ¶11, Ex. 6.)

F. Supp. 2d at 927 (citing *Vinole* and rejecting an allegation of misclassification as sufficient for conditional certification).[9]  Indeed, if mere classification were sufficient, "in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality of evidence." *Id.* at 927-28.  Consequently, even if Holiday classified all Executive Chefs as exempt (a fact not properly in evidence), that does not satisfy Plaintiff's burden on this motion.

### 3. Assuming the Matter is Properly in Evidence, Holiday's Re-Classification Of California Executive Chefs Has No Relevance To The Appropriateness Of Collective Certification

Evidence of subsequent remedial measures is inadmissible to prove culpability.  Fed. R. Evid. 407.  Decisions to reclassify employees from exempt to non-exempt are such remedial measures that are inadmissible.  *McKeen-Chaplin v. Provident Savs Bank, FSB*, 2015 WL 502697 at *12 (E.D. Cal. 2015); *Holick v. Cellular Sales of New York, LLC*, 2014 WL 4771719 at *3 (N.D.N.Y. 2014).  Reclassifications are not an admission of fault.  *Holick*, 2014 WL 4771719 at *3.

Moreover, counsel lacks a foundation to authenticate the evidence he seeks to submit.  (ECF No. 11, Exs. 2-4.)  Fed. R. Evid. 602; Fed. R. Evid. 802.  The evidence, in any event, appears to be addressed only to Plaintiff.  (ECF No. 11, ¶ 7 ("letter from Harvest to Tara Shaia"); ¶ 8 ("Harvest provided to the Plaintiff").)

Even if the documents were authenticated, did apply to people other than just Plaintiff and a reclassification decision were not a subsequent remedial measure, reclassifying employees in *California* should not be expanded to a *national* admission.  After all, California wage and hour exemptions are far more lenient and significantly different from the FLSA exemptions in a number of ways.  For example, the California exemptions require employees to be "primarily engaged" in exempt duties.  Cal. Code Regs. Tit. 8, §§ 11050(1)(B)(1)(e) (executive exemption), 11050(1)(B)(2)(f) (administrative exemption).

---

[9] *See also Jenkins v. The TJX Companies, Inc.*, 853 F. Supp. 2d 317, 323 (S.D.N.Y. 2012) (exempt classification is insufficient evidence to show the necessary unlawful policy for collective certification); *Pfol v. Farmers Insur. Group*, 2004 WL 554834 at *9 (C.D. Cal. 2009) (alleging a misclassification alo.ne does not overcome the individualized nature of the exempt status inquiry - denying conditional certification); *Trinh*, 2008 WL 1860161 at *4 n.2 (merely alleging misclassification does not establish an unlawful nationwide policy); *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (simply challenging exempt classification is insufficient to show that employees are similarly situated).

That test is quantitative, requiring employees to spend more than half of their work time performing exempt duties. *Id.* at § 11050(2)(O); *In re United Parcel Serv. Wage and Hour Cases*, 190 Cal. App. 4th 1001, 1018 (2010).

In contrast, the FLSA exemptions are qualitative, requiring only that the "primary duty" of the employee be exempt work. 29 C.F.R. §§ 541.100(a)(2) (executive exemption); 541.200(a)(2)-(3) (administrative exemption). While time spent on tasks is relevant to determining a "primary duty," time alone is not the sole test. *Id.* at § 541.700(b). The qualitative versus quantitative tests mean situations exist where an employee meets the FLSA exemption, but not the California exemption.[10]

Another significant difference are the numerous potential penalties available under California wage and hour law for misclassification (some of which Plaintiff's lawsuit seeks compared to the liquidated damages under the FLSA).[11] These significant differences plus the tsunami of class actions under California law militate in favor of reclassifying employees generally. No assumption of national significance is warranted, even assuming the admissibility of the evidence.

### 4. Asserting Similar Legal Claims Does Not Make Plaintiff Similarly Situated To Other Executive Chefs

What matters in class wide litigation is "not the raising of common 'questions' . . . but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis original). Despite the Supreme Court's instruction, Plaintiff's last argument is that Executive Chefs are "similarly situated" because they assert the same claims against Holiday. (ECF No. 10 at 13:19-28.)

Under *Dukes*, what matters is common answers to common questions, not just raising common questions. Plaintiff's motion, at best, only raises common questions. It does not establish that other

---

[10] Another important example are the definitions of exempt duties. The California exemptions incorporate the 1998 versions of the FLSA regulations. Cal. Code Regs. tit. 8, §§ 11050(1)(B)(1)(e). In contrast, the FLSA definitions are governed by newer regulations, which are different than the older versions. 29 C.F.R. § 541.102 (defining management duties). Thus, again, the results can be different based on the different definitions of exempt duties.

[11] *See, e.g.*, Cal. Lab. Code § 226 (penalties for inaccurate wage statements); Cal. Lab. Code § 203 (waiting time penalties for failure to pay all wages due on termination); Cal. Lab. Code § 226.7 (penalties for missed meal and rest breaks to non-exempt employees); Cal. Lab. Code § 1194.2 (liquidated damages).

Executive Chefs are similarly situated such that relief for any one of them would be common relief from the whole.  Thus, the Court should deny Plaintiff's motion.

### 5.    The Court Must Conduct Individualized Inquiries Into Each Chef's Exempt Status Classification That Will Predominate This Matter

In determining whether to conditionally certify a class, district courts (including courts in the Ninth Circuit) properly consider whether the case is amenable to common evidence.  *See Trinh*, 2008 WL 1860161 at *3 (courts examine the extent to which class members will rely on common evidence); *Palacios*, 2011 WL 6794438 at *6 (courts should assess whether plaintiff's claims are amenable to common evidence); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 219 (D. Conn. 2003) (court must be satisfied that common questions would predominate the merits determination).

An assessment of whether an employee falls within an exemption is an individual and fact-intensive inquiry and necessitates a careful factual analysis of the full range of the employee's job duties and responsibilities.  *Hernandez v. United Auto Credit Corp.*, 2010 WL 1337702 at *3 (N.D. Cal. 2010); *Trinh*, 2008 WL 1860161 at *5 ("determining whether employees are 'exempt' from FLSA overtime requirements involves a highly individualized inquiry into the job duties and compensation of each employee"), *Colson*, 687 F. Supp. 2d at 927-28 (same citing *Trinh*); *Mike*, 274 F. Supp. 2d at 220 (same); *Palacios*, 2011 WL 6794438  at *6 (same).[12]

In an exempt status case, what is required for conditional certification is a showing of an unlawful decision or policy, such as a policy requiring employees to perform primarily non-exempt duties.  *See Jenkins*, 853 F. Supp. 2d at 324 (denying conditional certification because plaintiffs did not show that they were required to perform non-managerial duties in contravention of the formal job

---

[12] Significantly, the Ninth Circuit has also recognized that the FLSA exemptions have a highly individualized nature.  *See In re Wells Fargo*, 571 F.3d 953, at 959 (9th Cir. 2009) ("[t]he fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties."); *Vinole*, 571 F.3d at 947 (outside sales exemption requires inquiries into how much time each individual spent in and out the office and how the employee performed his or her job).  The FLSA regulations confirm this view.  *See*, *e.g.*, 29 C.F.R. § 541.700 (primary duty determined "based on all the facts *in a particular case*" [emphasis added]); 29 C.F.R. § 106 ("Whether the employee meets the requirements of § 541.100 when the employee performs concurrent duties is *determined on a case-by-case basis* and based on the factors set forth in § 541.700."[emphasis added].)

13

1   description); *Trihn*, 2008 WL 1860161 at *4 n.2 (requiring substantial allegations identifying an

2   unlawful policy).

3          Here, Plaintiff has not even told the Court (as she must) how she plans to prove her case on

4   common evidence.  She has not provided any such evidence nor other admissible evidence of an

5   unlawful nationwide policy requiring Executive Chefs to perform non-exempt work.  Instead, she seeks

6   nationwide certification based on speculative hearsay assertions, an incomplete and unauthenticated job

7   description and classification paperwork directed to her only.  That is not enough to overcome the

8   individualized nature of exempt status determinations.  Therefore, the Court should deny Plaintiff's

9   motion in its entirety.

### B.   Even If Plaintiff Met Her Burden, the Entire Proposed Collective Should Not Receive Notice Because Many Waived the Right to Participate In This Lawsuit

12          If the Court finds Plaintiff's lack of evidence excusable, then the notice to the class must be

13   scrutinized carefully.  The notice cannot go out to the putative class as defined in the FAC.  This is

14   because the majority of the putative class is bound to an arbitration agreement and/or a separate *Pick Up*

15   *Stix* agreement, both of which contain enforceable class/collective action waivers.  (Bowers Dec., ¶¶ 4,

16   6-7, 9-11; Barger Dec., ¶¶ 3-5.)  The waivers forbid the vast majority of putative class members from

17   participating in this representative lawsuit.

18          What is more, those individuals subject to the arbitration agreement will be subject to an

19   attorneys' fee clause if they are given notice and opt-in.  This is because that contract has an attorneys'

20   fees clause that will be enforced by Holiday against any Chef that improperly opts-in to the litigation.

21   (*See* Bowers Dec., ¶¶ 10-11.)

22          Consequently, no one that is a party to either agreement should be given an opt-in notice.  They

23   should be excluded from the class definition and notice should be sent only to those putative class

24   members who have not already contractually waived their right to opt-in.  *Hoffman-LaRoche,* 493 U.S.

25   at 171-72 n.21 (explaining that court supervision of notice is necessary because "the potential for misuse

26   of the class device, as by misleading communications, may be countered by a court-authorized

27   notice. . . .  By monitoring preparation and distribution of the notice, a court can ensure that the notice is

28   timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the

14

content of the notice before it is distributed.").

### 1. Executive Chefs Entered Into Arbitration Agreements That Contain a Class/Collective Action Waiver Enforceable Under Many Different State's Laws

The Federal Arbitration Act ("FAA") requires the enforcement of an arbitration agreement unless grounds exist at law or in equity for the revocation of the contract. 9 U.S.C. § 2; *Sanders v. Swift Transportation Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1036 (N.D. Cal. 2012). To validate an arbitration agreement, courts look to general state law contract principles while giving due regard to strong federal policy favoring arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).[13] As the Executive Chefs work at 300 facilities scattered around America, there are different state law schemes on this subject. Under California law, for example, "[t]he existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1050-51 (2001); *Hilleary v. Garvin*, 193 Cal. App. 3d 322, 327 (1987).

Here, Holiday has enforceable arbitration agreements with 535 of the 759 putative class members. (Barger Dec., ¶¶ 3-5.) *See Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (enforceable arbitration agreements formed after an employee is made aware, is provided an opportunity to opt-out, and fails to); *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1122-23 (1999) (arbitration agreements are not invalid simply because they are imposed as a condition of employment). The agreement covers all disputes arising out of the Executive Chef's employment with Holiday. (Bowers Dec., Ex.¶¶ 10-11.) A dispute about wages falls within this definition.

Those Executive Chefs who are bound to arbitrate their claims are also bound to the agreement's class/collective action waiver. (*Id.*) *Concepcion*, 131 S. Ct. at 1747 (a class or collective action waiver in an arbitration agreement is not unconscionable and does not render the agreement unenforceable). They are prohibited from joining this litigation.

---

[13] While district courts look to state law (*Wagner*, 83 F.3d at 1049), they cannot invalidate arbitration agreements under a state law that is applicable only to arbitration contacts. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011).

If the Court disagrees with this argument, then the notice must be amended to warn the Chefs expressly that they will be subject to ancillary litigation and potential individual liability for Holiday's attorneys's fees per the agreement's fee provision.  (*See Id.*)  *See, e.g., Bah v. Shoe Mania, Inc.*, 2009 U.S. Dist. LEXIS 40803, at *11-12 (S.D.N.Y. May 13, 2009) (requiring notice to potential plaintiffs that they might be responsible for litigation costs); *Robbins-Pagel v. Wm. F. Puckett, Inc.*, 2006 U.S. Dist. LEXIS 85253, at *8-9 (M.D. Fla. Nov. 22, 2006) (requiring notice to inform potential plaintiffs that "they may be responsible for the defendant's costs in this matter").

The Chefs bound to the arbitration agreement should not be given the opportunity to opt-in to this lawsuit.  Otherwise, the case will quickly become unmanageable:

- Chefs likely will mistakenly opt-in to the case, requiring Holiday's motion practice to enforce the arbitration agreement and the fee provision.

- Dozens of motions featuring the laws of many different states, each requiring individual inquiries into possible contract defenses would result, clogging the docket and causing the parties to expend significant avoidable time and resources.

- Then, additional time will be expended enforcing the fee awards and putting needless economic burdens on the Chefs unless care is taken at this stage.

### 2. Executive Chefs Entered Into *Pick Up Stix* Agreements That Contain a Class/Collective Action Waiver

Almost all of the Executive Chefs in California already have accepted agreements in which they provided class/collective action waivers and a release in exchange for money.  (Bowers Dec., at ¶ 7; Barger Dec., ¶ 3.)  *See Chindarah v. Pick Up Stix Inc.*, 171 Cal. App. 4th 796 (2009).  Strong public policy supports enforcing those agreements.  *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).  Thus, a contract that contains a representative action waiver is enforceable and not unconscionable.  *Concepcion*, 131 S. Ct. at 1747;  *Palacios*, 2011 WL 6794438 at *2-3.

In *Palacios*, the plaintiff executed an agreement where she also waived her right to consent to become a member of a class.  *Palacios*, 2011 WL 6794438 at *2.  The employer argued that the waiver precluded her participation in the FLSA action that she initiated.  *Id.* at *1.  The Court agreed, finding that the class action waiver was enforceable and not procedurally or substantively unconscionable.  *Id.* at *2-3.

Plaintiff will raise a red-herring argument in reply — that the agreement cannot be enforced because it contains an FLSA release that requires Court approval.  At best, the argument fails to account for four things:

1. Defendant is not seeking to enforce the agreement *per se*, only to fashion a fair opt-in notice at this stage.

2. The class action waiver, which is approved by the Supreme Court and in a separate clause from the release, is enforceable.

3. Individual FLSA settlements are not necessarily unenforceable.  *See Picerni v. Bilingual Seit & Preschool, Inc.*, 925 F. Supp. 2d 368, 675-76 (E.D.N.Y. 2013).

4. If Court approval of the release is needed, even though notice should be revised based on the waiver issue alone, then that can be provided in a simple prove up hearing, either in this Court or before an arbitrator as the case may be.

### 3. Notice Must Be Significantly Revised to Exclude Those Putative Class Members Bound To the Class/Collective Action Waivers

Here, the strong public policy favoring enforcement of these agreements supports limiting the notice.  Executive Chefs that have arbitration and *Pick Up Stix* agreements should not get notice.

That approach balances Holiday's legitimate interest in limiting notice by enforcing the agreements (and limiting the concomitant tertiary litigation associated with enforcing them) with Plaintiff's legitimate interest in making certain that proper putative members be allowed to opt-in.  If this balanced approach is not followed, then the case will quickly become unmanageable because of the unnecessary confusion among the Chefs bound to the agreements resulting in individual adjudication of the enforceability of many dozens of contracts under many different state's laws.

As a secondary alternative to the above, Plaintiff could be allowed to renew this motion if discovery shows that these agreements are not binding.  Staggered notice is within the Court's discretion.  *See, e.g., Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 471 (S.D.N.Y. 2010) (denying motion for conditional certification of nationwide class of assistant store managers at retail chain "without prejudice to an application seeking notification with respect to [assistant store managers] at a more limited number of Marshalls stores").

**C.** **Even If Plaintiff Met Her Burden, the Proposed Notice Procedure Is Improper And Must Be Revised**

If the Court grants conditional certification despite Plaintiff's failure to submit competent evidence satisfying her burden on this Motion, then the Chefs must receive accurate and neutral notice. *Hoffman-La Roche*, 493 U.S. at 170; *Benedict v. Hewlett-Packard Co.*, 2014 WL 587135 at *13 (N.D. Cal. 2014). Plaintiff's proposed notice does not meet these basic standards and is unfair to Holiday.

**1.** **The Proposed Notice *Excludes* Several Important Issues**

For reasons best explained by her, Plaintiff omitted several essential terms to the class notice. For instance, the correct temporal scope of opt-in limitations period is missing. The lawsuit commences as to each opt-in member depending on when he or she opts-in (29 U.S.C. § 256(b)), yet Plaintiff improperly measures it from three years before the date of commencement of the lawsuit (October 8, 2011). Such a class period would far exceed either of the statutes of limitations in the FLSA.

There is no fair mention that the Court takes no position as to the viability of Plaintiff's claims. While Plaintiff trumpets at the very beginning of the notice that the Court is "ordering" notice, "ruled" that notice is "important" and made a "determination" that all the Chefs are similarly situated, she buries at the very last substantive sentence (just before the opt-in form and under a header that is unrelated), "The Court has taken no position regarding the merits of the Plaintiff's claims or Holiday Retirement's defenses." That disparate placement and wording is not fair and balanced.

The notice does not advise the putative class about their right to retain their own counsel. Instead, it forces opt-ins to become clients of Plaintiff's law firm. *Barrera v. US Airways Group, Inc.*, 2013 WL 4654567 at *9 (D. Ariz. 2013) (notice section advising individuals that they may contact plaintiff's counsel deleted because it could be construed as suggesting that potential plaintiffs should call plaintiff's counsel); *Wertheim v. State of AZ*, 1993 WL 603552 at * 6 (D. Ariz. Sept. 30, 1993) (directing plaintiff in FLSA putative collective action to omit the last paragraph of the notice about contacting plaintiff's law firm for more information).

There is no mention of the arbitration and the *Pick Up Stix* agreements. The notice does not explain the meaning of a collective action either. All of these issues must be explained if notice is going to the entire putative class.

1    Nothing tells the Chefs "not to contact the court."

2    The notice says nothing about the class members' liability for Holiday's costs should they lose.

3    It is also silent about the probability that improper opt-ins will face motion practice and a fee

4    petition for enforcing the arbitration agreement. *Benedict v. Hewlett-Packard Co.*, 2014 WL 587135 at

5    *14 (N.D. Cal. 2014).

6    Should this Court permit conditional certification, the notice should plainly and prominently

7    state that opt-in plaintiffs may be required to take time from work to provide sworn deposition testimony

8    or appear at trial. *Id.* This is important to employees because it means that they have to invest time and

9    money in the case. While this information is *sort of* in the notice, it should be clearly stated and placed

10   in a more conspicuous place instead of in the middle of a 10-line paragraph. (*See* section 4.) Otherwise,

11   it will be missed.

12   There is no reference to using a third party administrator (TPA) to provide answers to question

13   and otherwise communicate with the Chefs. The contact information of the putative class should go

14   through a TPA to protect the privacy of the Chefs. *Lewis v. Wells Fargo & Co*., 669 F. Supp. 2d 1124,

15   1128 (N.D. Cal. 2009)(TPA to distribute notice when plaintiffs did not explain why it would be

16   preferable for their counsel to oversee distribution). This is particularly important in light of Plaintiff's

17   inability to generate any declarations to support her Motion, even from her co-Plaintiff or from the only

18   current opt-in. Holiday would pay the costs for the TPA to protect its employees' privacy rights.

19   *Russell v. Wells Fargo & Co*., 2008 U.S. Dist. LEXIS 78771, at *13 (N.D. Cal. Sept. 3, 2008)(approving

20   use of TPA where defendant agreed to pay the cost).

21   ## 2.    The Proposed Notice *Includes* Several Improper Issues

22   There are several things added to the proposed notice that do not belong. For instance, Plaintiff

23   seeks an excessive opt-in period of 120 days. Such long periods are sometimes used when the putative

24   members are hard to reach, which is not the case here. *Williams v. Bally's Louisiana, Inc.*, 2006 WL

25   1235904 at *3 (E.D. La. May 5, 2006) (seamen); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D.

26   472, 482-83 (E.D. La. 2006) (foreign workers). Courts routinely find much shorter periods more

27   appropriate. *See, e.g., Williams v. Long*, 585 F. Supp. 2d 679, 692 (D. Md. 2008) (30 days). Given the

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION
CERTIFICATION / 4:14-CV-04495 PJH

current case schedule, a shorter period (such as 30 days) is more appropriate, especially because the deadline to file any motion to decertify is in August 2015.

The notice repeatedly emphasizes that the Court "authorized," "ordered," ruled" and "determined" that the notice is proper.  Using such forceful adjectives multiple times implies a strong Court imprimatur favoring opting-in.  This language should be replaced with neutral words used sparingly.

The notice also does not need to inform class members that the Court has "determined" that they are similarly situated.  That determination comes with the second tier analysis, not on the lightened evidentiary burden on this first tier motion.  All that happened here is that a light evidentiary burden was satisfied.  In fashioning notice, care must be taken to avoid even the appearance of judicial endorsement of the merits of the action.  *Hoffman-La Roche*, 493 U.S. at 174.

The notice says that Shaia seeks to represent "*all past* and present Chefs," without any temporal limitation.  The case has a statute of limitation, of course.

The Notice is on Plaintiff Counsel's pleading paper, so is not neutral.

The notice does not explain that the potential plaintiffs are opting in only for the specific claims asserted in the lawsuit.  Providing this will ensure that the Chefs understand that they are consenting to join only for the claims asserted in the notice.

The notice reads like a contingency retainer agreement.  For example, it discusses "free representation," no attorney expenses in the event of losing, payment of Plaintiffs' fees out of the recovery or at Holiday's expense in the event of success and "counsel will assist you" in testifying.  All of this implies that there are no consequences to joining this case.  (*See* section 4.)  Courts have stricken such language as inappropriate.  *DeKeyser v. Thyssenkrupp Waupaca, Inc*., 2008 WL 5263750 at *5 (E.D. Wis. 2008).

For the same reasons, the Court should strike the language informing class members that they can contact Plaintiff's counsel if they have questions about the lawsuit.  Post-notice, pre-opt-in questions should be routed to neither party's counsel, but to a neutral TPA instead.

In explaining the result of not opting-in, the notice redundantly says that the Chefs will not be bound by any favorable judgment and that they will not get any money from the lawsuit.  The

redundancy is not neutral as it overemphasizes the potential downside of not opting-in.

Using the Court's caption at the very top of the notice gives the imprimatur that the case has the Court's "seal of approval." That violates the *Hoffmann-La Roche* requirement that even the appearance of judicial endorsement must be avoided. 493 U.S. at 174; *Jirak v. Abbott Laboratories, Inc.,* 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008) (name of court at top of first page improper).

The notice twice tells the employees about anti-retaliation issues, in the body of the notice and again in the opt-in form. The overemphasis is not neutral and may reasonably lead current employees to wrongly fear retaliation from Holiday.

The suggestion that notice be delivered three times (by mail, email, and posting) is redundant. Sending notice by mail is sufficient. *See Hart v. U.S. Bank NA*, 2013 WL 5965637 (D. Ariz. 2013). E-mail notice is inappropriate because it has the potential to be copied and forwarded to other people with commentary that could distort the notice approved by the court and compromise the integrity of the notice process. *Sharma v. Burberry Ltd.*, 2014 WL 4385426, at *18 (E.D.N.Y. 2014).

Posting the notice in the workplace is improper for at least three good reasons. First, it would only reach current employees, nearly all of whom are bound to arbitration. Second, it would never reach terminated employees, who are the bulk of the potential class. Third, it would poison the workplace because it would tell all current employees about a wage and hour case when there is only one Executive Chef per community. *See Hintergerger v. Catholic Health System*, 2009 WL 3464134 at *13 (W.D.N.Y. 2009) (rejecting posting request).

If the Court is inclined to authorize opt-in notice despite the non-existent supporting evidence, then it should order Plaintiff to revise the notice and meet & confer with Holiday's counsel to fashion something that is as fair and neutral as possible.

## V.   OBJECTIONS TO PLAINTIFF'S EVIDENCE

Pursuant to Local Rule 7-3, below are Holiday's objections to Plaintiff's evidence.

| MATERIAL OBJECTED TO: | GROUNDS FOR OBJECTION: |
| --- | --- |
| 1. "There is little to zero variation in the duties of Executive Chefs, and the manner in which those duties are performed, from one Harvest location to the next." (Shaia Dec. at ¶15:12-13 | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602; *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008)(conclusory affidavits do not show personal knowledge as does testimony that relies upon inadmissible hearsay); *Jones v. Beverly Hills Unified School* |

21

| [ECF No. 12].) | *Dist.*, 2011 WL 2442077 at *4 (C.D. Cal. 2011) (sustaining objections to statements based on hearsay as lacking foundation); *De La Tore v. Merck Enterprises, Inc.*, 540 F. Supp. 2d 1066, 1075 (D. Ariz. 2008) ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience.").  Plaintiff bases this statement on hearsay and not personal observations of other communities. |
| 2.  "I know this because during my time with Harvest, I have spoken with dozens of other Executive Chefs of other Harvest retirement communities about our jobs and they all perform or performed the same kind of work I have described above, they all worked overtime, and they were all classified as exempt."  (Shaia Dec. at ¶15:13-16 [ECF No. 12].) | Hearsay, Fed. R. Evid. 801, 802; Lacks Foundation, Fed. R. Evid. 602.  Plaintiff offers the out of court statements of unidentified Executive Chefs to prove the truth of their supposed statements — that they all performed the same work as Plaintiff.  This is inadmissible hearsay.  Plaintiff also does not state any facts to establish admissibility through an exception to the hearsay rule. |
| 3.  "There is little variation in duties from one community to the next because, among other reasons, we all received similar training regarding standardized procedures for performing out duties, and receive the same written policies known as 'food service guidelines' that apply to all Executive Chefs, regardless of location." (Shaia Dec. at ¶15:16-19 [ECF No. 12].) | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602; *Shakur*, 514 F.3d at 890 (conclusory affidavits do not show personal knowledge ), *De La Tore*, 540 F. Supp. 2d at 1075. ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience.").  Plaintiff offers no facts showing that she was present for the training of any other Executive Chef or that she has personally observed Executive Chefs performing their duties at other communities. Further, she testifies about documents without foundation and does not provide them. |
| 4.  Medby Dec. at ¶7, Exhibit 2 [ECF No. 11]. | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602, *Shakur*, 514 F.3d at 890 (conclusory affidavits do not show personal knowledge ), *De La Tore*, 540 F. Supp. 2d at 1075 ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience."); Improper Authentication, Fed. R. Evid. 901; Improper Evidence of Subsequent Remedial Measures, Fed. R. Evid. 407, *McKeen-Chaplin v. Provident Savings Bank, FSB*, 2015 WL 502697 at *12 (E.D. Cal. 2015) (reclassifications are subsequent remedial measures), *Holick v. Cellular Sales of New York, LLC*, 2014 WL 4771719 at *3 (N.D.N.Y. 2014) (same); Hearsay, Fed. R. |

| | |
|---|---|
| | Evid. 801, 802.  Plaintiff's counsel does not lay a sufficient foundation to explain how he knows what this document is.  Nor has he offered sufficient evidence to establish that the document is what he claims it to be. |
| 5.  Medby Dec. at ¶8, Exhibit 3 [ECF No. 11]. | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602, *Shakur*, 514 F.3d at 890 (conclusory affidavits do not show personal knowledge ), *De La Tore*, 540 F. Supp. 2d at 1075 ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience."); Improper Authentication, Fed. R. Evid. 901; Improper Evidence of Subsequent Remedial Measures, Fed. R. Evid. 407, *McKeen-Chaplin*, 2015 WL 502697 at *12 (reclassifications are subsequent remedial measures), *Holick, LLC*, 2014 WL 4771719 at *3 (same); Hearsay, Fed. R. Evid. 801, 802. Plaintiff's counsel does not lay a sufficient foundation to explain how he knows what this document is.  Nor has he offered sufficient evidence to establish that the document is what he claims it to be. |
| 6.  Medby Dec. at ¶9, Exhibit 4 [ECF No. 11]. | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602, *Shakur*, 514 F.3d at 890 (conclusory affidavits do not show personal knowledge ), *De La Tore*, 540 F. Supp. 2d at 1075 ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience."); Improper Authentication, Fed. R. Evid. 901; Improper Evidence of Subsequent Remedial Measures, Fed. R. Evid. 407, *McKeen-Chaplin*, 2015 WL 502697 at *12 (reclassifications are subsequent remedial measures); *Holick,* 2014 WL 4771719 at *3 (same); Hearsay, Fed. R. Evid. 801, 802. Plaintiff's counsel does not lay a sufficient foundation to explain how he knows what this document is.  Nor has he offered sufficient evidence to establish that the document is what he claims it to be. |
| 7.  Medby Dec. at ¶10, Exhibit 5 [ECF No. 11]. | Lacks Foundation/Personal Knowledge, Fed. R. Evid. 602, *Shakur*, 514 F.3d at 890 (conclusory affidavits do not show personal knowledge ), *De La Tore*, 540 F. Supp. 2d at 1075 ("a witness has personal knowledge when testifying about events perceived through the physical senses or about opinions rationally based on personal observation and experience."); Improper Authentication, Fed. R. Evid. 901.  Plaintiff's counsel does not lay a |

| | sufficient foundation to explain how he knows what this document is.  Nor has he offered sufficient evidence to establish that the document is what he claims it to be.

In fact, this is not a complete document. (Bowers Dec. at ¶9.) |
|---|---|

## VI.     CONCLUSION

Plaintiff's Motion does not satisfy even the lenient burden for conditional certification.  A single declaration from Plaintiff and another from her lawyer, both of which contain hearsay statements and unauthenticated foundationless assertions, do not establish that a collective of over 750 current and former employees are similarly situated.  Exempt status requires individualized inquiries, and Plaintiff submitted no common evidence of any unlawful policy.  Therefore, Plaintiff's motion fails, and the Court should deny it.

If the Court finds that Plaintiff met her burden, then it should not send notice to Executive Chefs who entered into arbitration agreements or separate class/collective action waiver contracts.

Moreover, Plaintiff's notice procedure is overbroad and unfair to Holiday.  The opt-in procedure is too long and the notice reads like a retainer agreement that does not fairly explain the case.  The Court should not adopt Plaintiff's notice procedure.  Instead, it should require her to revise her proposed notice and work with defense counsel on a joint submission.

DATED:  March 4, 2015                        Respectfully submitted,

SEYFARTH SHAW LLP


By:  _____/s/ Brian T. Ashe_____
        Brian T. Ashe
        John R. Giovannone

Attorneys for Defendant
HARVEST MANAGEMENT SUB LLC

19167540v.3

24