SEYFARTH SHAW LLP
Brian T. Ashe (SBN 139999)
bashe@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:     (415) 397-2823
Facsimile:      (415) 397-8549

SEYFARTH SHAW LLP
John R. Giovannone (SBN 239366)
jgiovannone@seyfarth.com
333 S. Hope Street, Suite 3900
Los Angeles, California  90071
Telephone:     (213) 270-9600
Facsimile:      (213) 270-9601

Attorneys for Defendant
HARVEST MANAGEMENT SUB LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA SHAIA, ERIC PARKER, on behalf of themselves and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARVEST MANAGEMENT SUB LLC,<br><br>Defendant. | Case No. 4:14-cv-04495 PJH<br><br>**DECLARATION OF HEATHER BOWERS IN SUPPORT OF DEFENDANT HARVEST MANAGEMENT SUB LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**<br><br>Date:          April 1, 2015<br>Time:          9:00 a.m.<br>Courtroom:   3<br>Judge.:        Hon. Phyllis J. Hamilton |

**<u>DECLARATION OF HEATHER BOWERS</u>**

I, Heather Bowers, hereby declare as follows:

1.      I have personal knowledge of the matters stated herein, and if called to testify as to those matters, I could and would testify competently.

2.      I currently work for Harvest Management SUB LLC ("Holiday") as an Employee Relations Supervisor.  I have held that position since approximately August 2014.  In this position, my duties include managing claims by or about employees.  Because of my position, I am generally familiar with Holiday's business operations, particularly as they relate to employee relations issues.  Holiday owns or operates approximately 300 senior living communities throughout the United States.  A major service provided to the residents of our communities is in-house dining services.  In fact, the dining room is intended to be (and really is) one of the focal points of the community.

3.      Because of my work at Holiday, I am also familiar with the various job functions and job positions held by people working at Holiday's communities, including the positions in the communities' food services departments.  These positions include: Executive Chef, Sous Chef, Prep Cook, Kitchen Helper, Dishwasher, and Food Servers.  The Executive Chef is supposed to supervise and manage these positions and run the food services program at his or her assigned community.  Holiday considers Executive Chefs as part of the community Management Team.

4.      Because part of my job is to work on special employee relations projects, I helped manage a project seeking to resolve the potential claims of Executive Chefs who worked in California dating back to October 8, 2010.  That project began in November 2014 by sending California Executive Chefs (at their home addresses) a cover letter that explained Plaintiff Tara Shaia's lawsuit against Holiday, a settlement offer, and a release.  The only exceptions were Plaintiff Tara Shaia and any Executive Chefs that had signed releases previously.  To accept the settlement, all the Executive Chefs had to do was sign and return the release.  Holiday would then send them a check for the settlement amount.  Attached as Exhibit A is a true and correct copy of the template of the letter sent to California Executive Chefs (without the name, address, or settlement offer).  This document was created and has

1

been kept in the ordinary course of Holiday's business.  It was created at or near the time we started the settlement project.  It also has not been amended or altered.  Attached as Exhibit B is a true and correct copy of template release agreement sent to California Executive Chefs.  This document was created and has been kept in the ordinary course of Holiday's business.  It was created at or near the time we started the settlement project.  It also has not been amended or altered.

5.      As part of the settlement project described above, some Executive Chefs contacted Holiday to request a higher settlement payment.  Holiday consented to requested higher settlement amounts.

6.      Also as part of the settlement project described above, some Executive Chefs were sent "live checks."  By "live checks," I mean that Holiday sent these individuals signed checks with a settlement amount, along with an explanatory cover letter and a release.  The letter explained that cashing the check constituted acceptance of the settlement offer and release.  Attached as Exhibit C is a true and correct copy of the cover letter template and release described above.  This document was created and has been kept in the ordinary course of Holiday's business.  It was created at or near the time we started the settlement project.  It also has not been amended or altered.

7.      Because I helped manage the settlement project, I am also aware of how many California Executive Chefs accepted Holiday's settlement offers.  To date, 88 Executive Chefs have accepted Holiday's settlement offer, by signing releases, cashing "live checks," or entering into prior releases.

8.      Based on my experience at Holiday, I am also familiar with the current and past job descriptions for the various positions at Holiday's communities, including those for position of Executive Chef.  I have reviewed the Declaration of David M. Medby submitted in support of Plaintiff Tara Shaia's motion for conditional collective certification and Exhibit 5 attached to Mr. Medby's declaration.  Mr. Medby says that this document is the job description for Executive Chefs.  However, Exhibit 5 is not a complete document, it is missing the first page.  The job description for Executive Chefs effective as of July 12, 2010 is a six-page document, not a five-page document like Exhibit 5.

9.      Also based on my work and job duties at Holiday, I have knowledge of certain employee relations programs, such as Holiday's arbitration program.  Holiday's arbitration program consists of an

2

agreement between Holiday and its employees to arbitrate all employment-related disputes. Holiday started the program in approximately September 2013. Since the program began, Holiday has presented the arbitration agreement to employees in two ways.

10.     The first way was an "opt-out" procedure used with incumbent employees. Under that method, in mid-December 2013, Holiday had the arbitration agreement mailed to all current employees along with materials explaining that the agreement would become effective in early January 2014 if they did not sign and a form stating that they would like to "opt-out" of the arbitration program. The arbitration agreement explained that as well. Attached as Exhibit D is a true and correct copy of one of the arbitration agreements sent to current employees during "opt-out" procedure. This document was created and has been kept in the ordinary course of Holiday's business. It was created at or near the time we started the arbitration program. It has not been amended or altered.

11.     The second way Holiday presents the arbitration agreement to employees is during the onboarding process for new employees. Once Holiday hires an employee, they complete several forms during the on-boarding process. During that process, Holiday presents the employees with the arbitration agreement for signature. Holiday has used this process with new employees since September 2013. Attached as Exhibit H is a true and correct copy of a blank agreement that Holiday presents to its new employees during the onboarding process. This document was created and has been kept in the ordinary course of Holiday's business. It was created at or near the time we started the arbitration program with new employees. It has also not been amended or altered.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the forgoing is true and correct.

Executed on the 4th day of March 2015 in Lake Oswego, Oregon.


_____
HEATHER BOWERS

19181554v.1

# EXHIBIT A

**[EXCLUDE SHAIA FROM MAILING]**

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

**OFFER TO SETTLE DISPUTED CLAIMS IN EXCHANGE FOR MONEY PAYMENT IN THE AMOUNT OF [          ]**

Dear [employee]:

On October 8, 2014, an Executive Chef from one of Holiday Retirement's California communities filed a lawsuit against Holiday.  The lawsuit is captioned *Shaia v. Harvest Management Sub LLC*, Case No. 4:14-cv-04495-PJH, in the United States District Court for the Northern District of California.

Plaintiff has asserted six claims for relief against Holiday, which can be generally summarized as follows:

(1) First Claim for Relief:  Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (alleging that Holiday failed to pay overtime premiums for hours worked in excess of 40 per week, and that Holiday failed to record, report, and/or preserve records of hours worked);

(2) Second Claim for Relief:  California Wage Order No. 5-2001; California Labor Code §§ 510, 1194 (alleging that Holiday failed to pay overtime compensation for hours worked in excess of 40 per week, or over 8 per day, or over 12 per day);

(3) Third Claim for Relief:  California Labor Code §§ 201, 202, 203 (alleging that Holiday failed to pay all wages due to employees whose employment was terminated during the class period);

(4) Fourth Claim for Relief:  California Wage Order No. 5-2001; California Labor Code §§ 226, 1174, 1174.5 (alleging that Holiday failed to provide timely, accurate, itemized wage statements);

(5) Fifth Claim for Relief:  California Wage Order No. 5-2001; California Labor Code §§ 218.5, 226.7, 512 (alleging that Holiday did not provide proper meal and rest breaks and did not provide an additional hour of pay for missed breaks); and

(6) Sixth Claim for Relief:  California Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq*. (alleging that the foregoing conduct constituted unfair competition).

Plaintiff also has indicated that she intends to bring a claim under California Labor Code §§ 2698 *et seq*., the California Private Attorneys General Act, based on the California laws referenced above.

Plaintiff seeks additional wages, overtime compensation, penalties, liquidated damages, rest and meal break premiums, restitution, injunctive and equitable relief, a declaratory judgment, and interest, as well as her attorney fees and costs of the litigation.

This summary is accurate, but the complaint is 14 pages long, so it is only a description of plaintiff's claims.  If you would like to review the entire complaint to see precisely what it says, it can be found on the court's Public Access to Court Electronic Records ("PACER") website:  www.pacer.gov.  Additional court and case information, including information regarding obtaining copies of court documents, can be found on the court's website: http://www.cand.uscourts.gov/existcasefaq.

Also, the court clerk's office is located at 1301 Clay Street, Oakland, California 94612. The office is open from 9:00 a.m. to 4:00 p.m. Monday through Friday, excluding Court holidays.

Plaintiff wants to bring the lawsuit on behalf of you and all other Executive Chefs nationwide, including all Executive Chefs who were employed at a California community at any time since October 2010.  Our records show that you were employed as an Executive Chef in California between [                    ].

Holiday disputes plaintiff's allegations, denies that it is liable for any of the claims asserted or that it violated any law, and intends to vigorously defend the lawsuit.  The court has not made any decisions regarding the merits of the allegations, or whether plaintiff may proceed with this case on your behalf.  The case could take as long as 18 to 24 months to reach a final resolution, not counting any additional time spent on appeal.

If Holiday is successful in this litigation, plaintiff and any class members she represents will recover nothing.  If Holiday does not prevail in the litigation, you may be entitled to recover money as a result of the lawsuit.  At present, there is no set formula or calculation for any potential recovery.

Because lawsuits between an employer and its employees may present many difficulties for all involved, they can have a negative impact on the workplace environment and could interrupt our efforts to provide the Holiday Touch to our residents.  Therefore, before this litigation progresses any further, and in an attempt to avoid these issues, Holiday is offering to settle any claims which you may have against Holiday.

**Holiday offers you $_____ to settle all claims which you may have against Holiday.**

This amount was calculated by taking into consideration the number of weeks you worked in the relevant time period and your average salary.  It will be subject to applicable withholdings and deductions.  The terms of the settlement are explained in detail in the enclosed document.  This settlement offer is intended to provide you compensation in return for a release of any potential claims you may have against Holiday.  Settling your claims now means that you would be waiving any right to participate in the lawsuit.

**Your employment will not be impacted positively or negatively as a result of your response to this settlement offer.**

If you believe the amount offered to you is fair and reasonable, and you wish to settle any claims you may have, please carefully review and sign the enclosed settlement agreement and return it in the enclosed self-addressed, stamped envelope with a postmark not later than _____, 2014.  You are free to discuss this offer with a lawyer of your choice.

**If you sign and return the enclosed settlement agreement with a postmark not later than _____, 2014, Holiday will mail you a check in the gross amount of $_____ (less applicable withholdings and deductions) within three business days after Holiday's receipt of your signed settlement agreement.**

Whether you accept the settlement offer is entirely up to you.  If you currently are employed by Holiday, resolving your claims through this offer of settlement or participating in the lawsuit will have no impact on your employment.  Holiday will not retaliate against you or reward you for any decision you make concerning this offer or the lawsuit.  Absolutely no adverse action will be taken against you no matter what you decide to do.

If you have any questions about the foregoing, or if you would like to request a copy of the complaint, please call [phone hotline] or email Chef.Settlement@holidaytouch.com.

# EXHIBIT B

[EMPLOYEE NAME AND ADDRESS]

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

An Executive Chef from one of Holiday Retirement's California communities has filed a lawsuit against Holiday.  The lawsuit is captioned *Shaia vs. Harvest Management Sub LLC*.  The complaint was filed in the United States District Court for the Northern District of California and assigned Case No. 4:14-cv-04495-PJH ("the Lawsuit").  Please read the cover letter that came with this document to get more information about the Lawsuit's claims.  If you have any questions for Holiday Retirement regarding this Agreement, or want a copy of the complaint in the Lawsuit, then please see the cover letter to this Agreement or call 971.245.8042 or email Chef.Settlement@holidaytouch.com.

The person bringing the Lawsuit ("the Plaintiff") says that she, and two groups of people she wants to represent, should have been classified as non-exempt, hourly employees.  These two groups are:  (i) anyone employed by Holiday as an Executive Chef in California at any time from October 8, 2010 through the present ("California Executive Chefs"); and (ii) anyone employed by Holiday as Executive Chefs anywhere in the United States from October 8, 2011 through the present ("Executive Chefs Nationwide").

Holiday Retirement disputes the claims in the Lawsuit and will fight them in court.  Because we want to settle any claims you may have against Holiday, however, we make this offer of settlement.

By agreeing to this Settlement Agreement and Release of Claims ("Agreement"), you are acknowledging that you have read the enclosed letter and this Agreement and agree with and understand the following:

(a)     You worked for Holiday Retirement as a California Executive Chef after October 8, 2010, a group that the Plaintiff is seeking to represent.

(b)     If you agree to accept this Agreement, then any claims you have or may have against Holiday Retirement will be released.

(c)     A genuine dispute exists about whether any additional wages or monies are owed to you for your work between from October 8, 2010 to the present.  Holiday Retirement believes that you have been paid all wages you are owed.  The Plaintiff disagrees and brought the Lawsuit.

(d)     You can consult, at your expense, with an attorney about this settlement offer.  You can show the attorney this Agreement.  If you are represented by an attorney for any claims against Holiday, then this offer cannot be made to you directly.  It needs to be made through your attorney.

(e)     You are not represented by an attorney for any claims against Holiday Retirement.

(f)     You acknowledge that Holiday Retirement has paid you all wages that you believe you are owed through the date you sign this Agreement.

1

## AGREEMENT TERMS

**1.** **Monetary Payment.**  For entering into this Agreement, Holiday Retirement will pay you $XXX, minus all appropriate withholdings and deductions.

**2(a).** **Release of Claims.**  You and your heirs and assigns release Harvest Management Sub LLC (otherwise known as Holiday Retirement) and its predecessors, successors, assigns, parents, subsidiaries, affiliates (including affiliated partnerships and joint ventures), and any of their respective past or present directors, officers, stockholders, shareholders, members, partners, agents, employees, insurers and attorneys ("Releasees") from any and all causes of action, damages, penalties, costs and expenses, known or unknown ("Claims"), which you now have or may have against any of the Releasees.

**2(b).** **Examples of Released Claims.**  The release includes, but is not limited to, Claims for unpaid overtime, meal and rest break penalties, penalties for failure to maintain required business records, waiting time penalties, wage statement penalties, unfair competition, penalties under the Private Attorneys General Act, interest, liquidated damages, and for any other violations of the California Labor Code, the California Wage Orders, the Fair Labor Standards Act, and the California Business & Professions Code.  This release shall not extend to any Claims which by law cannot be released.

**2(c).** **Promise Not to File Lawsuit or Administrative Action or Participate in Class, Collective, or Representative Action.**  You agree not to file any lawsuit or administrative complaint about any Claims released by this Agreement, except that you may file any administrative complaints for which you do not seek monetary recovery.  You further agree not to participate in any representative lawsuit that asserts any of the Claims released by this Agreement.

**3.** **Waiver Of Section 1542 of the California Civil Code.**  You waive Section 1542 of the California Civil Code which says:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

This means that you are waiving all Claims against the Releasees, even those that you do not presently know or suspect that you may have.

**4.** **No Admission.**  This Agreement is entered into in compromise of disputed claims. It is not an admission of wrongdoing.

**5.** **Acknowledgement Of Voluntary Execution.**  You are freely and voluntarily entering into this Agreement.  You understand the terms of this Agreement and have had a reasonable amount of time to consider it.  You are aware that the claims asserted in the Lawsuit on your behalf are included among the Claims that you are releasing by signing this Agreement.

By signing this Agreement, you are waiving your right to any monetary or other recovery from the Lawsuit.  You agree that the amount of money being paid to you is fair and reasonable.

**6.**      **Agreement to Facilitate Settlement.**  If a court ever considers this Agreement, you agree to affirm the validity of it (and your desire to remain bound by it) in a writing to be given to the judge.

**7.**      **No Retaliation.**  Absolutely no retaliation or adverse action will be taken against you or your employment no matter what you decide to do in terms of this Agreement.

**8.**      **Entire Agreement.**  This Agreement sets forth the entire Agreement between you and Holiday Retirement.  It replaces entirely all prior agreements or understandings between the parties pertaining to the matters covered by the Agreement.

**9.**      **Severability.**  The parties intend that the release in this Agreement be as broad as permitted by law.  If any term or phrase in this Agreement are determined by any court to be wholly or partially illegal or unenforceable, then the remaining terms or phrases shall not be affected, and the Court is asked to revise this Agreement by "blue penciling" (judge editing) those terms or phrases to make them legal and enforceable.  If that is not possible, then the illegal or unenforceable term or phrase shall be deemed not to be part of this Agreement.

**To receive payment under this Agreement, you must sign and return this Agreement in the enclosed self-addressed, stamped envelope, with a postmark date no later than Wednesday, November 26, 2014.**

Dated: November ____, 2014          By: _____
                                                   [EMPLOYEE NAME]

Dated: November 3, 2014              Harvest Management Sub LLC

                                                  By: _____
                                                         Scott Shanaberger, Chief Financial Officer

# EXHIBIT C



[Date]


[Name]
[Street Address]
[City, State, Zip]

Dear _____,

Enclosed is a check in the gross amount of _____ as well as a letter and a proposed settlement agreement we sent to you in _____. There is a lawsuit pending against Holiday Retirement that potentially involves all of the Executive Chefs who worked for the company in the last three to four years. The enclosed documents are designed to help settle that lawsuit and any claims you may have against the company.

The enclosed documents tell you a lot more about the lawsuit and the settlement agreement. Please read them.

Because you could potentially become involved in the lawsuit, we want to settle any possible claims with you now. If you would like to settle your claims, then please sign the settlement agreement, return the agreement to me, and deposit the check. Even though the documents say that the deadline to return a signed agreement already passed, we are extending that deadline to _____.

You will see on the back of the check that there is special language in your signature space. If you tender the check but do not sign the settlement agreement, this language will have the effect of binding you to the agreement anyway. **Please note that if you do not cash the check by _____, it will be canceled by the company and will no longer be valid.**

The check is offered to you as **full satisfaction** for a release by you of any known or unknown legal claims against Holiday Retirement. **Do not deposit or otherwise tender it unless you intend to be bound by the enclosed settlement agreement.**

If you have any questions or want to discuss this offer, then please feel free to call me at 971.245.8020 or e-mail me at Chef.Settlement@holidaytouch.com.

Thank you very much.

Sincerely,


Diane Thompson

Enclosures

# EXHIBIT D

**MUTUAL AGREEMENT TO ARBITRATE**
**EMPLOYMENT-RELATED DISPUTES**

While Holiday Retirement and its affiliated entities (together, the "**Company**") hope that employment disputes will not occur, the Company believes that when such disputes do arise, it is in the mutual interest of everyone involved to resolve them through binding arbitration.  Generally arbitration is more informal than a court proceeding, resolves disputes more quickly and less expensively than a court proceeding, and involves less disruption for the parties.  In light of these advantages, all disputes arising out of, or related to, an Associate's employment relationship with the Company, or the termination thereof, shall be resolved through binding arbitration.  By entering into this Agreement, you ("**Associate**") and the Company are **WAIVING THE RIGHT TO A JURY TRIAL** for all disputes arising out of, or related to, the employment relationship and are **WAIVING THE RIGHT TO PURSUE, OR PARTICIPATE IN, ANY CLASS OR OTHER FORM OF REPRESENTATIVE ACTION** concerning these types of disputes.

The Company and Associate hereby agree that any dispute between Associate and the Company (including the Company's affiliates, successors, predecessors, parents, subsidiaries, divisions, dba's, contractors, employees, officers, directors, and agents) that is related to, arises from, or is in connection with Associate's employment, or the termination of Associate's employment with the Company, must be submitted for resolution by mandatory, binding arbitration.  The Federal Arbitration Act., 9 U.S.C. § 1 *et seq.*, shall govern the interpretation and enforcement of this Agreement.

The arbitration proceedings will be administered by Judicial Arbitration and Mediation Services, Inc. ("**JAMS**") according to its Employment Rules and Procedures in effect at the time the claim is filed.  The JAMS rules for employment disputes can be found at the following website: http://www.jamsadr.com/rules-employment-arbitration/.  All arbitration proceedings under this Agreement shall be conducted on a confidential basis.

Any arbitration under this Agreement will take place on an individual basis only.  Neither Associate nor the Company is permitted to start or participate (*e.g.*, as a class member) in class arbitrations or class, collective, or representative actions involving any employment-related dispute between Associate and the Company.  Associate and the Company agree that, by entering into this Agreement, Associate and the Company each are **WAIVING THE RIGHT TO START OR PARTICIPATE (ACTIVELY OR PASSIVELY) IN A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION** involving any and all employment-related disputes between Associate and the Company.  No arbitrator has or will be permitted to have the authority to resolve any employment-related dispute on a class, collective, or representative basis.  It is the intent of the parties that a court of competent jurisdiction (not an arbitrator) will determine the scope and enforceability of this paragraph to the extent there is a challenge to its enforceability.

The arbitration requirement set forth in this Agreement applies to all federal, state, and local statutory, constitutional, contractual, and common law claims, including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Equal Pay Act of 1963, the Fair Labor Standards Act, the Americans with Disabilities Act, the California Fair Employment and Housing Act, the California Labor Code, California Industrial Welfare Commission Wage Orders, California Business and Professions Code § 17200 *et seq*., all applicable state employment discrimination laws, and all applicable state wage-hour laws.  Both the Company and Associate shall be precluded from

bringing or raising in court or another forum any dispute that was or could have been submitted to binding arbitration.

This Agreement **does not** apply to claims for workers' compensation benefits, individual claims arising under ERISA (29 U.S.C. § 1001 *et seq.*), unemployment compensation claims, or the right to file an administrative charge before a governmental agency.

You have the right to opt-out of this Agreement, as provided on the attached opt-out form.  If you do not wish to be bound by the binding arbitration and class action waiver in this Agreement, you must notify the Company in writing, and the Company must receive your notification, before this Agreement goes into effect on January 6, 2014.  Your written notification must be mailed to the address stated below, Attn: Legal Department/Arbitration Opt Out, and must include:  (1) your name, (2) your address, (3) your signature, and (4) a checkmark in the opt-out box.  **If you do not opt out in this manner, your acceptance of employment or continued employment with the Company will mean that you accept the terms of this Agreement.  No signature is required.  Absent an effective opt-out notification, this Agreement will go into effect on January 6, 2014.**

Binding arbitration under this Agreement shall be conducted in Portland, Oregon; provided, however, Associate may choose to bring an arbitration action in the state where Associate was employed (or as near as feasible to the state where Associate was employed) or in the state where Associate resides.  The arbitration shall be conducted before one neutral arbitrator mutually selected by both parties from JAMS, or appointed pursuant to the JAMS rules if the parties cannot agree on the arbitrator.

If either the Company or Associate hereafter institutes or participates in any legal action outside of the arbitration process for any claim required to be submitted to arbitration under this Agreement, the other party may bring a motion or petition to compel arbitration.  To the extent permitted by law, the party prevailing on a motion or petition to compel arbitration may recover the attorneys' fees and costs of bringing or defending the motion or petition to compel arbitration.

To the extent required by applicable law, the Company shall pay all additional costs peculiar to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding (for instance, the Company will, if required by applicable law, pay the arbitrator's fees to the extent they exceed court filing fees).  Associate has the right to be represented by counsel at arbitration.  Except as set forth in the immediately preceding paragraph, each party shall pay its own costs and attorneys' fees; however, the arbitrator shall have the authority to award costs and attorneys' fees to the prevailing party to the extent permitted by law, and the arbitrator shall award costs and attorneys' fees to the prevailing party to the extent required by law.  Discovery may be initiated by the parties after the selection of the arbitrator and may be initiated without first obtaining permission from the arbitrator.  In the event of a dispute regarding discovery, either party may ask the arbitrator to determine what discovery is appropriate under the circumstances or adequate for the prosecution or defense of the claims.  However, under no circumstances may discovery exceed the requirements of the applicable Federal Rules of Civil Procedure.  The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents.  The arbitrator shall have the authority to issue an award (or partial award) without conducting an arbitration hearing on the grounds that there is no claim stated on which relief can be granted or that there is no genuine issue as to any material fact, and that the party is

entitled to a judgment as a matter of law, consistent with Rule 12 or Rule 56 of the Federal Rules of Civil Procedure.  The arbitrator shall, within thirty days after the conclusion of the arbitration, issue a written opinion setting forth the factual and legal bases for his or her decision.  Judgment on the arbitrator's award may be entered in any court having jurisdiction.  Any award resulting from the arbitration shall be kept confidential unless prohibited by applicable law.

If any portion of this Agreement is deemed invalid or unenforceable, it shall be severed and the remaining portions shall remain in full force and effect.

This Agreement does not in any way alter the "at-will" employment status of Associate.  Both the Company and Associate are free to terminate the employment relationship at any time for any lawful reason, and employment is not for any specific or definite duration.  This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

The Company may make changes to this Agreement only by providing notice to Associate ninety (90) days in advance.  Any changes will not apply to pending claims, and the Company may not make retroactive changes to this Agreement.

[Signature page follows]

**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, AND I UNDERSTAND AND AGREE TO ITS TERMS.  I HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY, AND HAVE NOT RELIED UPON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED HEREIN.**

**I UNDERSTAND I AM GIVING UP MY RIGHT TO A JURY TRIAL BY ENTERING INTO THIS AGREEMENT. I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ OR HAVE HAD THE OPPORTUNITY TO READ THIS ARBITRATION AGREEMENT.  I UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMITTED TO ARBITRATION PURSUANT TO THE ARBITRATION AGREEMENT RATHER THAN TO A JUDGE AND JURY IN COURT.**

**I UNDERSTAND I AM GIVING UP MY RIGHT TO START OR PARTICIPATE IN A CLASS ACTION OR OTHER FORM OF COLLECTIVE OR REPRESENTATIVE ACTION AND INSTEAD AGREE TO ARBITRATE ANY EMPLOYMENT-RELATED DISPUTE ON AN INDIVIDUAL BASIS ONLY.**

**This Agreement goes into effect on January 6, 2014, unless we receive your opt-out form prior to such date.  Your acceptance of employment or continued employment with the Company, absent our timely receipt of an opt-out form from you, shall mean that you accept the terms of this Agreement and agree to arbitrate any employment-related dispute.  This Agreement does not alter Associate's at-will employment status.  Your signature is not required for this Agreement to be effective.**

COMPANY:

_____
Scott Shanaberger, Company Representative

Holiday Retirement
5885 Meadows Road, Suite 500
Lake Oswego, Oregon  97035

# ARBITRATION AGREEMENT <u>OPT-OUT</u> FORM

_____
(Associate printed name)


_____
(Address)


_____        _____
(Associate signature)                          (Date)

☐  I elect to **opt-out** of the Mutual Agreement to Arbitrate Employment-Related Disputes


You must mail this form to:
Holiday Retirement
Attn: Legal Department/Arbitration Opt Out
5885 Meadows Road, Suite 500
Lake Oswego, Oregon  97035

# EXHIBIT H

## MUTUAL AGREEMENT TO ARBITRATE
## EMPLOYMENT-RELATED DISPUTES

While Holiday Retirement and its affiliated entities (together, the "**Company**") hope that employment disputes will not occur, the Company believes that when such disputes do arise, it is in the mutual interest of everyone involved to resolve them through binding arbitration.  Generally arbitration is more informal than a court proceeding, resolves disputes more quickly and less expensively than a court proceeding, and involves less disruption for the parties.  In light of these advantages, all disputes arising out of, or related to, an Associate's employment relationship with the Company, or the termination thereof, shall be resolved through binding arbitration.  By entering into this Agreement, you ("**Associate**") and the Company are **WAIVING THE RIGHT TO A JURY TRIAL** for all disputes arising out of, or related to, the employment relationship and are **WAIVING THE RIGHT TO PURSUE, OR PARTICIPATE IN, ANY CLASS OR OTHER FORM OF REPRESENTATIVE ACTION** concerning these types of disputes.

The Company and Associate hereby agree that any dispute between Associate and the Company (including the Company's affiliates, successors, predecessors, parents, subsidiaries, divisions, dba's, contractors, employees, officers, directors, and agents) that is related to, arises from, or is in connection with Associate's employment, or the termination of Associate's employment with the Company, must be submitted for resolution by mandatory, binding arbitration.  The Federal Arbitration Act., 9 U.S.C. § 1 *et seq.*, shall govern the interpretation and enforcement of this Agreement.

The arbitration proceedings will be administered by Judicial Arbitration and Mediation Services, Inc. ("**JAMS**") according to its Employment Rules and Procedures in effect at the time the claim is filed.  The JAMS rules for employment disputes can be found at the following website: http://www.jamsadr.com/rules-employment-arbitration/.  All arbitration proceedings under this Agreement shall be conducted on a confidential basis.

Any arbitration under this Agreement will take place on an individual basis only.  Neither Associate nor the Company is permitted to start or participate (*e.g.*, as a class member) in class arbitrations or class, collective, or representative actions involving any employment-related dispute between Associate and the Company.  Associate and the Company agree that, by entering into this Agreement, Associate and the Company each are **WAIVING THE RIGHT TO START OR PARTICIPATE (ACTIVELY OR PASSIVELY) IN A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION** involving any and all employment-related disputes between Associate and the Company.  No arbitrator has or will be permitted to have the authority to resolve any employment-related dispute on a class, collective, or representative basis.  It is the intent of the parties that a court of competent jurisdiction (not an arbitrator) will determine the scope and enforceability of this paragraph to the extent there is a challenge to its enforceability.

The arbitration requirement set forth in this Agreement applies to all federal, state, and local statutory, constitutional, contractual, and common law claims, including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Equal Pay Act of 1963, the Fair Labor Standards Act, the Americans with Disabilities Act, the California Fair Employment and Housing Act, the California Labor Code, California Industrial Welfare Commission Wage Orders, California Business and Professions Code § 17200 *et seq.*, all applicable state employment discrimination laws, and all applicable state wage-hour laws.  Both the Company and Associate shall be precluded from

*FILE ORIGINAL IN ASSOCIATE'S PERSONNEL FILE AND EMAIL A SCANNED COPY TO PAYROLL*

bringing or raising in court or another forum any dispute that was or could have been submitted to binding arbitration.

This Agreement **does not** apply to claims for workers' compensation benefits, individual claims arising under ERISA (29 U.S.C. § 1001 *et seq.*), unemployment compensation claims, or the right to file an administrative charge before a governmental agency. In addition, this Agreement **does not** apply to representative actions to the extent state law prohibits waivers of the right of an employee to bring representative actions.

Binding arbitration under this Agreement shall be conducted in Portland, Oregon; provided, however, Associate may choose to bring an arbitration action in the state where Associate was employed (or as near as feasible to the state where Associate was employed) or in the state where Associate resides. The arbitration shall be conducted before one neutral arbitrator mutually selected by both parties from JAMS, or appointed pursuant to the JAMS rules if the parties cannot agree on the arbitrator.

If either the Company or Associate hereafter institutes or participates in any legal action outside of the arbitration process for any claim required to be submitted to arbitration under this Agreement, the other party may bring a motion or petition to compel arbitration. To the extent permitted by law, the party prevailing on a motion or petition to compel arbitration may recover the attorneys' fees and costs of bringing or defending the motion or petition to compel arbitration.

To the extent required by applicable law, the Company shall pay all additional costs peculiar to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding (for instance, the Company will, if required by applicable law, pay the arbitrator's fees to the extent they exceed court filing fees). Associate has the right to be represented by counsel at arbitration. Except as set forth in the immediately preceding paragraph, each party shall pay its own costs and attorneys' fees; however, the arbitrator shall have the authority to award costs and attorneys' fees to the prevailing party to the extent permitted by law, and the arbitrator shall award costs and attorneys' fees to the prevailing party to the extent required by law. Discovery may be initiated by the parties after the selection of the arbitrator and may be initiated without first obtaining permission from the arbitrator. In the event of a dispute regarding discovery, either party may ask the arbitrator to determine what discovery is appropriate under the circumstances or adequate for the prosecution or defense of the claims. However, under no circumstances may discovery exceed the requirements of the applicable Federal Rules of Civil Procedure. The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents. The arbitrator shall have the authority to issue an award (or partial award) without conducting an arbitration hearing on the grounds that there is no claim stated on which relief can be granted or that there is no genuine issue as to any material fact, and that the party is entitled to a judgment as a matter of law, consistent with Rule 12 or Rule 56 of the Federal Rules of Civil Procedure. The arbitrator shall, within thirty days after the conclusion of the arbitration, issue a written opinion setting forth the factual and legal bases for his or her decision. Judgment on the arbitrator's award may be entered in any court having jurisdiction. Any award resulting from the arbitration shall be kept confidential unless prohibited by applicable law.

If any portion of this Agreement is deemed invalid or unenforceable, it shall be severed and the remaining portions shall remain in full force and effect.

New Employee Arbitration Form
Page 2 of 4

This Agreement does not in any way alter the "at-will" employment status of Associate.  Both the Company and Associate are free to terminate the employment relationship at any time for any lawful reason, and employment is not for any specific or definite duration.  This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

The Company may make changes to this Agreement only by providing notice to Associate ninety (90) days in advance.  Any changes will not apply to pending claims, and the Company may not make retroactive changes to this Agreement.

[Signature page follows]

New Employee Arbitration Form
Page 3 of 4

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, AND I UNDERSTAND AND AGREE TO ITS TERMS.  I HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY, AND HAVE NOT RELIED UPON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED HEREIN.

I UNDERSTAND I AM GIVING UP MY RIGHT TO A JURY TRIAL BY ENTERING INTO THIS AGREEMENT. I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ OR HAVE HAD THE OPPORTUNITY TO READ THIS ARBITRATION AGREEMENT.  I UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMITTED TO ARBITRATION PURSUANT TO THE ARBITRATION AGREEMENT RATHER THAN TO A JUDGE AND JURY IN COURT.

I UNDERSTAND I AM GIVING UP MY RIGHT TO START OR PARTICIPATE IN A CLASS ACTION OR OTHER FORM OF COLLECTIVE OR REPRESENTATIVE ACTION AND INSTEAD AGREE TO ARBITRATE ANY EMPLOYMENT-RELATED DISPUTE ON AN INDIVIDUAL BASIS ONLY.

This Agreement goes into effect immediately upon your signature below and is a required condition of your employment with the Company.  This Agreement does not alter Associate's at-will employment status.

ASSOCIATE:


_____
(Associate printed name)


_____        _____
(Associate signature)                                              (Date)



COMPANY:

_____
Scott Shanaberger, Company Representative

Holiday Retirement
5885 Meadows Road, Suite 500
Lake Oswego, Oregon  97035

New Employee Arbitration Form
Page 4 of 4

*FILE ORIGINAL IN ASSOCIATE'S PERSONNEL FILE AND EMAIL A SCANNED COPY TO PAYROLL*