UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TARA SHAIA, et al.,

    Plaintiffs,

    v.

HARVEST MANAGEMENT SUB LLC,

    Defendant.
_____/

No. C 14-4495 PJH

**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION**

    Plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") came on for hearing before this court on April 1, 2015. Plaintiffs appeared by their counsel David Medby, and defendant appeared by its counsel Brian Ashe. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

## BACKGROUND

    Named plaintiffs Tara Shaia ("Shaia") and Eric Parker ("Parker") are/were employed as Executive Chefs at senior retirement communities operated by defendant Harvest Management Sub LLC ("Holiday").[1] Holiday currently owns or operates approximately 300 senior living communities throughout the United States. First Amended Complaint ("FAC") ¶ 16. Shaia has been employed at Holiday's Bay Park senior retirement community in Pinole, California, since approximately 2005. Parker was employed at Holiday's Las Brisas

---

[1] Defendant Harvest Management Sub LLC does business as Holiday Retirement. Plaintiff refers to defendant in this motion as "Harvest," and defendant refers to itself as "Holiday."

senior retirement community in San Luis Obispo, California, during 2012. See FAC ¶¶ 8, 14, 15.

The FLSA requires covered employers to compensate certain non-exempt employees for time worked in excess of the maximum hours set forth in the statute. See 29 U.S.C. § 207(a). Any non-exempt employee who works more than 40 hours in one week shall be paid "not less than one and one-half times the regular rate of pay at which he is employed." 20 U.S.C. § 207(a)(1).

"[A]n action to recover [under the FLSA] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); see also Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). Each employee that wishes to join an FLSA collective action must opt into the suit by filing a notice of consent to become a party with the court in which the action is brought. See 29 U.S.C. § 216(b).

In the present action, plaintiffs allege that Executive Chefs have the primary duties of cooking and preparing all meals for Harvest residents; assisting other kitchen workers in the performance of their duties and/or filling in for any kitchen employees who are absent from work (including dishwashing and clearing tables); interacting with residents in the dining room to gauge resident satisfaction; pouring coffee for residents in the dining room; completing orders with suppliers of food and other goods utilized in the kitchen; and modifying menus to meet the specific resident preferences. FAC ¶ 8. Plaintiffs assert that Holiday intentionally misclassified the Executive Chefs as exempt from the overtime provisions of the FLSA and/or state wage and hour laws. Id. They allege that Holiday has unlawfully refused to pay plaintiffs for overtime hours worked, as required by the FLSA, FAC ¶ 12, and have otherwise failed to comply with California's wage and hours laws.

In the present motion, Holiday asserts that it instituted an "arbitration program" for all its employees in approximately September 2013. See Declaration of Heather Bowers in Support of Opposition ("Bowers Decl.") ¶¶ 9-11. At the time Holiday began the arbitration program, it began presenting each new employee with the arbitration agreement for

signature at the time of hire.  Bowers Decl. ¶ 11 & Exh. H.  In mid-December 2013, Holiday began mailing the arbitration agreement to each then-current employee along with materials explaining that the agreement would become effective in early January 2014 unless the employee signed and submitted an opt-out form.  Id. ¶ 10 & Exh. D.

The arbitration agreement mandates arbitration of all employment-related disputes and contains a broad class action (or other representative action) waiver clause.  Id. & Exhs. D, H.  Some Executive Chefs executed agreements as part of the hiring process.  Id. ¶ 11.  Others simply did not opt out of the agreement when it was rolled out to incumbent employees.  Id. ¶ 10.  Holiday claims that more than 70% of the members of the putative class are bound by these agreements.  Barger Decl. ¶¶ 4-5.

Holiday asserts further that in November 2014 (after the present lawsuit was filed), it instituted a limited settlement campaign which it claims was permitted by Chindarah v. Pick Up Stix, Inc., 171 Cal. App. 4th 796, 803 (2009) (statutory right to receive overtime pay embodied in Labor Code § 1194 is unwaivable pursuant to Labor Code § 206.5, although employee can agree to compromise/release claim to past overtime wages as part of settlement of bona fide dispute over those wages).

In November 2014, Holiday mailed an explanatory cover letter and a settlement offer to each putative California member (except for Shaia and any putative class member who had signed a release).  Bowers Decl. ¶ 4.  To accept the settlement, the Executive Chefs had only to sign and return the release.  Id.  In part, the release provided that the employee agreed "not to file any lawsuit or administrative complaint about any Claims released by this Agreement," except for admininstrative complaints not seeking monetary recovery, and also agreed "not to participate in any representative lawsuit that asserts any of the Claims released by this Agreement."  Id. ¶¶ 4, 6, Exhs. B, C.

Some Executive Chefs responded with a request for a higher settlement payment, and Holiday consented to these requests.  Id. ¶ 5.  In addition, some of the Executive Chefs were sent "live checks," with a note saying that they could accept the settlement and agree to release their claims by cashing the checks, which some did.  Id. ¶ 6.  Holiday

asserts that to date, 88 California Executive Chefs have accepted the settlement offer. Id. ¶ 7.[2]

Shaia filed the present action as sole named plaintiff, on October 18, 2014. On October 29, 2014, the parties stipulated that the date for Holiday to respond to the complaint would be December 1, 2014. On October 31, 2014, Shaia filed a consent-to-join form. On November 5, 2014, Shaia filed a consent-to-join form for Amanda Anna Cultrona ("Cultrona"). On November 12, 2014, Shaia filed a motion for conditional certification of the collective action. On November 13, 2014, the court stayed further briefing of the certification motion and vacating the noticed hearing date, on the basis that the parties had not yet appeared for the initial case management conference ("CMC") and no pretrial schedule had been set.

On December 1, 2014, the day its response to the complaint was due, Holiday filed a motion to dismiss. On December 3, 2014, Shaia filed a motion requesting that the pending certification motion be heard on shortened time, but the court denied the motion. On December 15, 2014, Shaia filed a consent-to-join form for Parker, and on the same date, filed the FAC, joining Parker as a named plaintiff.

Holiday withdrew the motion to dismiss, and filed an answer on January 2, 2015. On January 5, 2015, plaintiffs filed a consent-to-join form for Josephina Gubatan ("Gubatan"). At the January 22, 2015, initial CMC, the court set a briefing and hearing schedule for the certification motion and a schedule for the eventual motion for class certification. On February 11, 2015, plaintiffs filed a notice of withdrawal of the consent-to-join forms for Cutrona and Gubaton. On March 3, 2015, the day before Holiday's opposition to the certification motion was due, plaintiffs filed a consent-to-join form for Angelica Williams ("Williams"). On March 30, 2015, after the certification motion was fully briefed, and two days before the hearing, plaintiffs filed a notice of withdrawal of the

---

[2] According to Holiday, it employed 759 Executive Chefs in its Harvest facilities in the United States during the past three years. Declaration of Meghann Barger in Support of Opposition ("Barger Decl.") at ¶ 3. The number of Executive Chefs in California over that same time period was 96. Id.

4

consent-to-join form for Williams.

Plaintiffs now seek conditional certification of a nationwide FLSA collective action. They seek an order allowing them to proceed on behalf of

> [a]ll persons who were[,] are, or will be employed by Harvest nationwide as Executive Chefs at any time within three years prior to October 8, 2011 through the date of final disposition of this action, and who were, are, or will be misclassified by Harvest as exempt from overtime pay requirements under federal law.

**DISCUSSION**

A.  Legal Standard

An employee may bring an FLSA collective action on behalf of himself/herself and other employees who are "similarly situated" and who have filed written consents to join the action. 29 U.S.C. § 216(b); see Valladon v. City of Oakland, 2009 WL 2591346 at *7 (N.D. Cal. Aug. 21, 2009). Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term "similarly situated." See Velasquez v. HSBC Finance Corp., 266 F.R.D. 424, 426-27 (N.D. Cal. 2010). In Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989), the Supreme Court indicated that a proper collective action will address in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged prohibited activity." Id. at 170. However, plaintiffs in a collective action are not subject to the requirements of class actions under Federal Rule of Civil Procedure 23. See Lewis v. Wells Fargo & Co., 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009).

District courts in the Ninth Circuit have adopted a two-tier approach for determining whether proposed collective action plaintiffs are "similarly situated." See, e.g., Adedapoidle-Tyehimba v. Crunch, LLC, 2013 WL 4082137 at *6 (N.D. Cal. Aug. 9, 2013); Harris v. Vector Mktg. Corp., 716 F.Supp. 2d 835, 837 (N.D. Cal. 2010); Lewis, 669 F.Supp. 2d at 1127.

The first tier is the "notice" stage, at which the court determines whether the members of the proposed collective should be notified of the action. Harris, 716 F.Supp.2d at 837. "The question is essentially whether there are potentially similarly-situated class

5

members who would benefit from receiving notice at this stage of the pendency of this action as to all defendants." Wellens v. Daiichi Sankyo, Inc., 2014 WL 2126877 at *2 (N.D. Cal. May 22, 2014) (citation omitted).

This determination is made under a "fairly lenient standard," which in the Ninth Circuit typically results in conditional certification. See, e.g., Alvarez v. Farmers Ins. Exch., 2014 WL 4685031 at *3 n.6 (N.D. Cal. Sept. 19, 2014) (noting that courts outside the Ninth Circuit apply a more stringent test); Daniels v. Aéropostale W., Inc., 2013 WL 1758891 at *2 (N.D. Cal. Apr. 24, 2013) (because evidence available at this stage is limited, "courts make this determination under a fairly lenient standard which typically results in conditional class certification").

The plaintiff must make substantial allegations that the putative class members were subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond the "mere averments" in the complaint for the class allegations. Id. These allegations must be supported by declarations. Velasquez, 266 F.R.D. at 427. Unsupported allegations of FLSA violations are not sufficient to meet the plaintiffs' burden. Id.; see also Labrie v. UPS Supply Chain Solutions, Inc., 2009 WL 723599 at *4 (N.D. Cal. Mar. 18, 2009) (plaintiff must provide some factual basis "beyond mere averments" that the potential plaintiffs are similarly situated).

The initial "notice stage" is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims. Thus, "courts routinely hold that the potential applicability of an FLSA exemption does not preclude conditional certification." Benedict v. Hewlett-Packard Co., 2014 WL 587135, at *11 (N.D. Cal. Feb. 13, 2014). Even if plaintiffs eventually do not prevail on their FLSA claim because they are subject to exemptions, "a collective action should still be certified if they are similarly situated." Stanfield v. First NLC Fin. Servs., LLC, 2006 WL 3190527 at *4 (N.D. Cal. Nov. 1, 2006).

At the second stage, after the conclusion of discovery and usually in response to a motion for decertification by the defendant, the court applies a stricter standard for "similarly situated." During this stage, the court reviews several factors, including the

disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit. See Lewis, 669 F.Supp.2d at 1127.

B.    Plaintiffs' Motion

Plaintiffs seek conditional certification at the "initial notice" stage, under the "lenient standard" described above. Plaintiffs seek an order certifying this as a nationwide collective action under the FLSA; approving the proposed notice and authorizing dissemination of the notice to the members of the proposed collective action class by mail, e-mail, and posting at Harvest retirement community locations; and directing Holiday to produce the names, addresses and e-mail addresses, telephone numbers, and Social Security numbers of all collective action members. Plaintiffs[3] make two main arguments in support of their motion – that they easily meet the "similarly situated" standard for notice at this early stage of the litigation, and that their proposed notice is the best notice practicable to the members of the collective action.

First, plaintiffs contend that they are "similarly situated" to the other Executive Chefs. They assert that the pleadings and affidavits filed in support of the motion show that all Executive Chefs are subject to the same uniform policy of being classified as exempt from overtime requirements (except for the Executive Chefs employed in California, who have been classified as non-exempt by Holiday since May 2, 2014); that the job description for Executive Chefs applies to all Holiday's senior retirement communities nationwide and the job responsibilities of Executive Chefs are identical or substantially similar regardless of location; that Holiday contends that Executive Chefs, based on their job responsibilities, should be classified as nonexempt, hourly employees (except for the California Executive Chefs); that Holiday contends that it expects its Executive Chefs to work 50 hours per week to perform their job responsibilities; and that

---

[3] Shaia was the only moving party as of the time the motion was filed.

7

1  prior to May 2, 2014, Holiday did not pay any of its Executive Chefs overtime compensation
2  for hours worked in excess of 40 per week (and still does not for Executive Chefs outside
3  California).

4  With the moving papers, plaintiffs have submitted a declaration by Shaia, in which
5  she describes her job duties as Executive Chef at the Harvest facility at Pinole, California.
6  She states that she has often worked more than 40 hours per week and that she was
7  classified as "exempt" from overtime requirements from the time she began working there
8  until May 2, 2014. She asserts that there is little-to-no variation in the duties of Executive
9  Chefs and the manner in which those duties are performed, from one Harvest location to
10 another, and that she knows this based on conversations she has had with "dozens of
11 other Executive Chefs" at other Harvest communities. She also asserts that the Executive
12 Chefs all receive similar training regarding standardized procedures for performing their
13 duties, and receive the same "food service guidelines" that apply to all Executive Chefs.

14 Plaintiffs also submitted a declaration by plaintiffs' counsel David Medby, to which
15 are attached as exhibits a copy of a May 2, 2014 letter from Holiday to Shaia informing her
16 of the reclassification of her job, from exempt to non-exempt; a copy of a Holiday document
17 entitled "California Executive Chefs Transition FAQ," which Holiday allegedly provided to
18 Shaia; a copy of a Holiday document entitled "California Executive Chef Transition
19 Frequently Asked Questions (follow-up) May 2014," which Holiday allegedly provided to
20 Shaia; and copies of substantially identical job descriptions for the position of Executive
21 Chefs at four Harvest locations (Massachusetts, Oregon, Texas, and Florida), dated
22 October and November 2014, which Mr. Medby obtained from Holiday's website.

23 With the reply to Holiday's opposition, plaintiffs filed a declaration by Parker, in which
24 he describes his job duties while employed at Holiday's facility in San Luis Obispo,
25 California, from May 7, 2012, to November 29, 2012; and a declaration by Williams, in
26 which she describes her job duties while employed at Holiday's facility in Chico, California
27 from August 11, 2012, to July 6, 2014, and at Holiday's facility at Spring, Texas, from July
28 7, 2014, to October 7, 2014. Both Parker and Williams state that they were classified as

"exempt" from overtime requirements during the time they worked at those Holiday facilities. They also assert that there is little-to-no variation in the duties of Executive Chefs and the manner in which those duties are performed, from one Harvest location to another, and that they know this based on conversations they have had with "many other Executive Chefs" at other Harvest retirement communities. Williams also bases her knowledge on her experiences working at two different Harvest locations. Parker and Williams assert further that Holiday Executive Chefs all receive similar training regarding standardized procedures for performing their duties, and receive the same "food service guidelines" that apply to all Executive Chefs, regardless of location.

Plaintiffs argue that the copies of job descriptions attached to the Medby Declaration demonstrate that the Executive Chefs at Holiday's Harvest facilities all had similar job duties. They assert further that Holiday's recent reclassification of California Executive Chefs as non-exempt demonstrates that all Executive Chefs nationwide were unlawfully classified as exempt salaried employees; that Holiday's reclassification of the California Executive Chefs demonstrates that all Executive Chefs nationwide worked unpaid overtime; that Executive Chefs have identical primary duties in compliance with standardized Holiday procedures nationwide; that Holiday views its Executive Chefs as similarly situated; and that all Executive Chefs are similarly situated with respect to their overtime claims.

In their second main argument, plaintiffs contend that their proposed form of notice is the best notice practicable, because it communicates to Executive Chefs (members of the proposed collective action) the rights at stake in this litigation and their options. Plaintiffs seek an order from the court requiring Holiday to provide the names, last-known mailing addresses, and last-known e-mail addresses of the potential opt-ins within 28 days of the date the court grants the motion for conditional certification. They assert that individual mailing, coupled with e-mailing and posting at the workplace, will ensure that notice more effectively reaches Executive Chefs to inform them of their options.

In opposition, Holiday argues that plaintiffs cannot meet their burden of showing that

the members of the proposed class are "similarly situated" because they have not provided admissible evidence. Holiday asserts that the Shaia Declaration contains hearsay and is not based on personal knowledge, and that the documents attached to the Medby Declaration are unauthenticated and lack foundation. Holiday also notes that the moving papers include no declaration from Parker, no putative class declarations, and no admissible documentary evidence showing that the Executive Chefs are bound by common policies nationwide.

At the hearing, Holiday's counsel also objected to the Parker Declaration on the basis that it was not filed with the moving papers, and to the Williams Declaration on the basis that she has withdrawn her notice of consent-to-join. Plaintiffs' counsel offered to withdraw the Parker Declaration, conceding that because his consent-to-join form was filed two and a half months before Holiday's opposition to the present motion was due, the declaration should have been filed in time for Holiday to address it in the opposition. Plaintiffs' counsel asserted, however, that the same accusation of lack of diligence could not be directed at the Williams Declaration, because Williams' consent-to-join form was filed only one day before Holiday's opposition was due. He also argued that even though Williams is not a member of the collective action, any statements in her declaration made on personal knowledge are admissible, although he also indicated his willingness to strike the declaration.

Holiday also makes several arguments that are directed more towards the merits of the case, including the argument that plaintiffs have not attempted to harmonize the genuine and material differences among the many hundreds of individuals falling within her description of the purported classes; the argument that the act of reclassifying employees in California cannot be expanded to a nationwide admission, as California wage and hour exemptions are more lenient and significantly different from the FLSA exemptions; and the argument that while an assessment of whether an employee falls within an exemption is an individualized and fact-intensive inquiry, and necessitates a careful factual analysis of the full range of the employee's job duties and responsibilities, plaintiffs have not told the court

how they plan to prove their case on common evidence.

Holiday asserts that plaintiffs seek nationwide certification based on speculative hearsay assertions, an incomplete and unauthenticated job description, and classification paperwork directed to Shaia only. Holiday contends that that is not enough to support the individualized inquiry and to make an exempt status determination.

Holiday argues further that even if plaintiffs have met their burden, all members of the proposed collective action should not receive notice because many have waived their right to proceed in the lawsuit. Thus, Holiday contends, the proposed notice should not go out to all members of the putative class as defined in the FAC. Holiday asserts that a majority of those putative class members are bound to a separate arbitration agreement and/or a separate Pick Up Stix agreement, both of which contain enforceable class/ collective action waivers.

Holiday contends that the only members of the putative class who are not bound by the arbitration agreements are those whose employment terminated prior to the start of the arbitration program, or those few remaining employees who affirmatively opted out of the program. Holiday asserts that because the Executive Chefs who entered into the arbitration agreement and/or the Pick Up Stix agreement are barred from proceeding as part of a class or collective action, the notice must therefore be significantly revised to exclude those Executive Chefs.

Finally, Holiday contends, the proposed form of notice and the proposed notice procedure are improper. Holiday poses numerous objections to the proposed form of notice submitted with plaintiffs' motion, both as to statements or information Holiday asserts should have been included but was not, and as to statements or instructions that were included but should not have been.

The court finds that the motion for conditional certification must be GRANTED. While the evidence is thin, and might not be admissible in a substantive motion or at trial, it is adequate under the relaxed evidentiary standards that are applied at the first-tier stage of collective action certification. It is true that some courts have held, as Holiday's counsel

argued at the hearing, that only admissible evidence can be considered at this stage of the proceedings. See, e.g., Colson v. Avnet, Inc., 687 F.Supp.2d 914, 928 (D. Ariz. 2010) (citing Harrison v. McDonald's Corp., 411 F.Supp. 2d 862, 865-66 (S.D. Ohio 2005)).

It appears, however, that a majority of courts have determined that evidentiary rules should be relaxed at this stage. See, e.g., Syed v. M-I, L.L.C., 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014) (evidentiary rules are not strictly applied); Davis v. Social Serv. Coordinators, Inc., 2012 WL 3744 657 at *7 (E.D. Cal. Aug. 28, 2012) ("many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage"); Dominguez v. Schwarzenegger, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ("unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial"). Among other things, "the limitation on hearsay is relaxed." Syed, 2014 WL 6685966 at *7.

Even discounting the Parker Declaration, the court finds that plaintiffs have provided, through the Shaia Declaration and the Williams Declaration (which plaintiffs had a reasonable basis for filing late), sufficient evidence describing the Executive Chef job duties at three of defendant's locations.[4] This evidence is adequate to show for purposes of conditional certification that the Executive Chefs are similarly situated with regard to plaintiffs' claim that Holiday had a practice of not paying them overtime wages.

As for the proposed form of notice, the court advised the parties at the hearing that it was unacceptable, and directed the parties to meet and confer, and submit a revised form of notice to the court within 30 days. In particular, the court noted problems with the lack of neutrality. For example, the revised proposed notice should include a prominent statement that the court takes no position on the merits or viability of plaintiffs' claims, should not be printed on plaintiffs' counsel's pleading paper, and should not bear the caption of the court.

---

[4] To obviate any need for Holiday to respond to the Williams Declaration, the court will accept only those portions based on personal knowledge.

12

See Hoffman-La Roche, 493 U.S. at 174 (trial court must avoid even the appearance of judicial endorsement of the merits of the action). On the other hand, the statement, "A court authorized this notice" is both correct and appropriate, as is information regarding the court where the case is pending (but not the name of the undersigned judge). See, e.g., Labrie, 2009 WL 723599 at *8. Further, there is no requirement that the parties utilize a third-party administrator, or that employees may not communicate with plaintiffs' counsel, as the court "is authorized to order the production of potential class members' contact information to [p]laintiffs' counsel." Lewis, 669 F.Supp. 2d at 1128.

The question whether certain employees are precluded from participating as members of the collective action by virtue of the arbitration/settlement agreements is not properly before the court at this first stage of the certification. Nevertheless, the notice may include a statement advising the recipients that the parties dispute whether Executive Chefs who have settled their claims or entered into arbitration agreements will be eligible to opt into the collective action. As for what employee contact information Holiday must provide, the court finds that names and mailing addresses will provide the best means of contact. There is no requirement that Holiday provide e-mail addresses and Social Security numbers, or that the notice be posted at any Harvest workplace.

With regard to Holiday's remaining objections, the court anticipates that the parties will make a good-faith attempt to resolve their differences, and arrive at an agreement without the necessity of additional court involvement. This includes the dispute regarding the length of the opt-in period, which the court suggests may be too short at 30 days, but too long at 120 days.

**CONCLUSION**

In accordance with the foregoing, plaintiffs' motion for conditional certification of a collective action is GRANTED. The parties shall meet and confer, and, no later than May 1, 2015, shall submit a proposed form of notice to the court for approval. In addition, while Holiday has posed no objection to the proposed opt-in form, the court finds that it should include a statement that the potential plaintiff agrees to be bound by any adjudication or

settlement of the action, whether favorable or unfavorable, and that the potential plaintiff agrees to be bound by the decisions entered into by the named plaintiffs and their counsel.

Once the proposed form of notice has been approved by the court, Holiday will have 14 additional days to produce the names and mailing addresses of the collective action members.

**IT IS SO ORDERED.**

Dated:  April 13, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge